ADAM SMITH ET AL.

V.

JAMES DINSMORE.

1. SUBROGATION—RELEASE OF PART OF MORTGAGED PREMISES.—A executed to B three notes, and mortgages to secure the same. Subsequently C and D obtained liens on all of the lands described in B's mortgages. E purchased of A 220 acres of the land covered by B's largest mortgage ($8,200 on 410 acres), and by arrangement his tract was discharged from B's mortgage by his paying a portion of the purchase money on the principal, etc., of the $8,200 mortgage, and by paying the balance on the interest, etc., due on B's two other mortgages. *Held*, that in case of a sheriff's sale of the 220 acres to satisfy D's lien, E would be entitled to be subrogated to the amount paid on the principal, interest, etc., of the $8,200 mortgage, but not to the amount paid on the two other mortgages.

2. SAME—TAKING OTHER SECURITY.—The court is of opinion that the fact that E took other security from A to secure him from the C mortgage, does not affect his right to subrogation.

3. SUBROGATION—RELEASE.—When a party is subrogated to the rights under a prior mortgage which he has been compelled to pay, he simply steps

into the shoes of the mortgagee and takes the latter's rights and no more. The fact that the form of the transaction is a release and not an assignment, does not affect the right to subrogation. The amount of the mortgage can not be increased by means of subrogation.

APPEAL from the Circuit Court of Whiteside county. Opinion filed February 5, 1885.

One Peter Bressler executed to the Ætna Life Insurance Company his three several notes and several mortgages to secure the same. The first note was for $8,200, and the second for $6,500, and the third for $6,000. The number of acres of land contained in all the mortgages was 1,080, and the number in the mortgage to secure the larger note was 410 acres. The date of the several notes and mortgages was March 21, 1881, and recorded on same day. Afterward Bressler executed to Henry Smith a second mortgage on all the lands described in all the Ætna mortgages, to secure $1,500, which note and mortgage was assigned to Adam Smith after the filing of the original bill by Henry Smith. On March 15, 1883, one John Martin obtained a third lien on all the land by judgment in the circuit court for $3,395.

It appears also that on March 26, 1883, James Dinsmore, one of the parties to this suit, and who has filed a cross-bill, purchased of said Bressler 220 acres of the 410 acres of the land covered by the $8,200 mortgage above mentioned, and received a deed from Bressler therefor for the sum of $7,700, which by agreement was to be applied in discharge of the said Ætna mortgage on this land if it could be done. That after this transaction, in order to clear the said 220 acres of land from the Ætna mortgage, Dinsmore, by agreement with the Ætna Company, procured a release to be executed by it of said mortgage, which release was duly recorded March 27, 1883. It further appears that John Martin, on April 3, 1883, had execution issued against Bressler, and levied on the 220 acres of land covered by the release, and had it sold by the sheriff to satisfy his judgment on July 13, 1883, and bid it in himself, and certificate of sale issued to him, as set out in cross-bill, for $2,035.

Smith v. Dinsmore.

The court, upon the proof and pleadings, decreed that the defendants in the cross-bill of Dinsmore pay to the latter $8,292.86, with interest, with costs of proceedings on the cross-bill, within twenty days; that the premises be sold at public auction; that the master shall first pay from the avails of said sale the costs of cross-bill and his own commissions; that he shall next pay said sum of money and interest to Dinsmore; the balance he shall hold subject to the order of court; that the certificate of purchase of John Martin be canceled. The court also ordered sale of the lands described in the original bill by Smith to satisfy his mortgage. The Ætna Life Insurance Company was not a party to this suit. From this decree Martin and Adam and Henry Smith appeal and assign for error:

1st. That Dinsmore is not entitled to subrogation as decreed by the court.

2d. That if he is entitled to be subrogated, he is not entitled to the amount which had been allowed him by the court on the land he purchased, and which the release covers.

Mr. J. E. McPHERRAN and Messrs. MANAHAN & WARD, for appellants; as to subrogation, cited Sanford v. McLane, 3 Paige, 122; Constant v. Matteson, 22 Ill. 547; Bassett v. Lockard, 60 Ill. 165.

Messrs. J. & J. DINSMORE, for appellee; cited Conway v. Parkham, 24 Miss. 665; Hunt v. Hunt, 14 Pick. 384; Gibson v. Crehore, 3 Pick. 475; Towle v. Hoit, 14 N. H. 61; Bell v. Woodward, 34 N. H. 90; Young v. Morgan, 89 Ill. 200.

LACEY, J. We will first determine the right of Dinsmore to subrogation. It appears that upon the purchase of the two hundred and twenty acres of the land of Bressler, he went to the Ætna Life Insurance Company to procure a release of the mortgage on the land, and he found that in one bill and proceeding the company had procured a decree of foreclosure in the United States Circuit Court in the Northern District of

Illinois, on all said Ætna mortgages, though the decree was several as to each mortgage. He then made a contract with it to set aside its decree and allow him to pay up all the interest on all the mortgages and all costs and attorneys' fees and a certain amount to be paid on the principal of the large mortgage, and it to release the land he had purchased from Bressler, which contract was carried out as agreed upon.

The seven thousand seven hundred dollars purchase money that he had agreed to pay to Bressler was applied in discharge of the Ætna mortgages and interest as follows: On the larger mortgage, covering the land in question, he paid on the principal the sum of $4,400 and two interest coupons of $574 each, making in all $5,548, paid on that note and mortgage. He paid on the interest of the $6,500 mortgage two other coupons of $455 each, making $910 on that mortgage, and the last smaller mortgage of $6,000, two coupons for $420 each, making $840, making in all $7,298, leaving a balance of the $7,700 of the sum of $402, which we presume was the costs and attorneys' fees incurred in the foreclosure suit in the United States Circuit Court.

We are clearly of the opinion that Dinsmore has the right to be subrogated to the position of the original mortgagee as far as he has paid and discharged the mortgages. After having purchased the land he was compelled, if he made his title good to the land which he had purchased, to pay off and satisfy at least the mortgage on the 410 acre tract, or by some arrangement, as he did make, to get his land discharged by the payment of a less sum.

As a part of the condition the company compelled him to pay all the interest due, and one year in advance on the other two mortgages, and all costs and attorneys' fees.

It is claimed that Dinsmore took other security from Bressler to secure himself against the Smith mortgage, and for that reason has lost his right of subrogation. We do not think that he forfeited his right by the transaction to insist on his claim to be subrogated to the rights of the Ætna mortgage. What right has Smith to claim the benefit of any mortgage Dinsmore may have taken from Bressler? He was no party to the trans-

action and was put in no worse position by it. What matters it to him if he was in no worse position as regards the Ætna mortgage than he was before Dinsmore took the release? And what matters it that the form of the transaction between Dinsmore took the form of a release instead of an assignment?

What right has Martin to claim the benefit of Dinsmore's money that paid off the Ætna mortgage? He wants to take the land from Dinsmore free from incumbrance created by the Ætna mortgage, and deprive Dinsmore of the land and of the money he paid to the Ætna company. What injustice that would be! It would indeed be a windfall for Martin, but at the expense of a man that owed him nothing.

The doctrine of subrogation is well supported and illustrated by the opinion of the Supreme Court in the following cases, viz.: Young v. Morgan, 89 Ill. 200; Beaver v. Slanker, 94 Ill. 175. Those cases support the doctrine here announced.

There remains now the question whether Dinsmore has not been subrogated in too large an amount to his rights under the Ætna mortgage. And in that matter we think it is clear that he has been. The decree of the court requires the 220 acre tract of land to be sold and $8,292.86 paid to him on account of his interest in the mortgage. When a party is subrogated to the rights under a prior mortgage which he has been compelled to pay, he simply steps into the shoes of the mortgagee and takes the latter's rights, and no more.

All that was paid on the $8,200 mortgage was the $4,400 and the two coupons of $574 interest on it, making $5,548, and the proportionate share of the expense, costs and attorneys' fees in the United States Circuit Court, which, as we figure it, allowing the $402 to be divided between the three Ætna mortgages in the proportion that $8,200 bears to the other two, we make it $163.20, making $5,711.20. The last amount, as we understand the evidence, is all that can be charged to be the proper amount for subrogation on the $8,200 mortgage. But after the payment on the latter mortgage had been made there would remain due the Ætna on the mortgage the sum of $3,800 of the principal. Now, adding

the amount remaining due to the Ætna Life Insurance Company to the amount the court allowed to Dinsmore, $8,292.86, the total sum would be $12,092.86. But the sum due on the mortgage at the time, and its accrued costs and attorney's fee, was only $9,511.20, showing that the combined claim remaining due the Ætna company and Dinsmore by this decree is made to exceed the amount of the mortgage, costs and interest, by the sum of $2,581.66.

We do not think that by means of subrogation the amount of the mortgage can be increased. Subrogation is simply a kind of purchase recogn zed by the law for the purpose of forwarding the ends of justice. A party who should purchase a portion of a mortgage can only claim the interest purchased, leaving to the party from whom he purchased the balance. We suppose that Dinsmore might claim his rights of subrogation out of the sale of the other two mortgaged premises for the amount of the interest, expenses, and costs he paid on them, if occasion required and when the time arrives. The substance of the transaction between Dinsmore and the Ætna company was that the former took an equitable assignment of a portion of the mortgage on 220 acres of the land. The consideration for this was the amount above shown, which he paid on the $8,200 mortgage and expenses. This was done by agreement with the Ætna company. If Smith or Martin, or both, are willing to accept this division of the mortgage and redeem from it and pay Dinsmore the amount he has paid and interest, or if the land is sold and that amount paid him, we see no objection, and Dinsmore can not complain. But if they insist that the division is not a proper or just one, they would have to redeem from the entire Ætna mortgage of $8,200 and interests and costs, and ask subrogation themselves if the court upon investigation should allow it after giving the Ætna company the right to be heard.

The decree of the court below is therefore reversed and the cause remanded with the directions to allow to Dinsmore no more than he appears to have paid for the release on the 220 acres, which was credited on the $8,200 mortgage, and interest and costs of the United States Court foreclosure and attor-

ney's fee paid, which by proper proportion would belong to it. The amount paid on the interest of the other two mortgages and their proportionate share of said costs and attorney's fee should not be allowed him out of the sale of the 220 acres of land. We do not require the court to be governed by the calculations made by this court as to the amounts, unless they should prove accurate, upon a further hearing.

Decree reversed and remanded.