HENRY SMITH

*v.*

JAMES DINSMOOR.

*Filed at Ottawa January 25, 1887.*

1. MORTGAGE—*revival after merger.* By vacating a decree of foreclosure of a mortgage, and dismissing the bill, the mortgage will be revived from its merger in the decree, and stand as though no proceeding to foreclose had been taken.

2. PURCHASER FROM MORTGAGOR—*discharge of prior incumbrance—right to subrogation.* The owner of a large body of lands gave three mortgages to an insurance company, each on different tracts from the others, after which he gave another mortgage to A, on all the lands embraced in the three prior ones. He then sold to B two hundred and twenty acres of the land in the first mortgage, and also in the mortgage to A, for $7700, shortly after

which C recovered a judgment against the mortgagor, who procured a release from the insurance company as to the two hundred and twenty acres, by the purchaser applying $4400 of the purchase money on the debt secured by its first mortgage, and the balance on the other mortgages: *Held*, that the purchaser was entitled to be subrogated to the lien of the first mortgage, to the extent of $4400, with six per cent interest, as against the mortgage of A and the judgment in favor of C.

3. SAME—*purchaser taking indemnity as against another prior lien— effect upon his right to subrogation to the lien discharged.* Where a purchaser of mortgaged premises procured a release of the first mortgage, by payment of the purchase money to its holder, and took from his vendor a mortgage on other property to indemnify himself against another and intervening mortgage on the land sold him, it was *held*, that the taking of the mortgage indemnity did not affect his right to be subrogated to the lien of the first mortgage.

4. SAME—*when purchaser is regarded as an assignee, in equity—as respects intervening lien holders.* Where a second mortgage is given on the same land, the holder thereof acquires but a lien on the equity of redemption, and a subsequent judgment creditor occupies the same position; and a purchaser from the mortgagor, after these several liens have attached, is under no obligation to discharge the prior mortgage for the benefit of the other lien holders, and if he procures a release of the first mortgage as to his land, instead of taking an assignment, equity will treat him as an assignee, and the other incumbrancers will have no ground of complaint. By subrogation the prior incumbrance is transferred from one owner to another, which does not impair the junior security.

5. JUDGMENT CREDITOR—*to what time his rights relate back.* The rights of a judgment creditor are fixed by the state of facts existing at the date of his judgment, and not by the date of the levy of his execution; and he will not, in equity, be allowed to take advantage of a release of a prior mortgage after the recovery of the judgment, as against the right of a purchaser from his debtor, who procures such release, to be subrogated to the lien of the mortgage.

6. CLOUD ON TITLE—*certificate of purchase as against holder of prior equity.* The owner of mortgaged premises sold and conveyed the same on March 8, 1883. On March 15, 1883, a judgment was recovered against the mortgagor, upon which execution was issued, and the premises sold on June 13, 1883. The purchaser from the mortgagor, on March 22, 1883, procured a release of the mortgage as to the land bought by him: *Held*, that such purchaser was entitled, on bill for that purpose, to have the sale on the execution, and the certificate of purchase, set aside as a cloud on his title.

APPEAL from the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding.

42—119 ILL.

Mr. J. McPHERRAN, and Messrs. MANAHAN & WARD, for the appellant:

Subrogation obtains when the relation of guarantor, indorser, surety, co-promisor or creditor, under a claim junior to the subsisting lien of another, exists. Where a person, in view of the subsisting record debts on lands, purchases the · same while the debts are liens thereon, he is a volunteer, so far as he may discharge any such liens, as to all other creditors of the debtor who had subsisting claims at the time of such purchase.

It is only in cases where a person advances money to pay the debts of a third party, or stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor as a matter of course, without any agreement to that effect. In other cases, the demand of a creditor, which is paid with money of a third party, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished. *San-ford* v. *McLane,* 3 Paige, 122; *Constant* v. *Matteson,* 22 Ill. 547; *Bishop* v. *O'Conner,* 69 id. 431; *Bassett* v. *Lockheart,* 60 id. 165; *Pool* v. *Marshall,* 49 id. 441.

The lien of a judgment is not affected by the act of the debtor, or the equities of others, of which the judgment creditor has no notice. *Massey* v. *Westcott,* 40 Ill. 163; *Giteau* v. *Wisely,* 47 id. 436; *McFadden* v. *Worthington,* 45 id. 363; *Tenney* v. *Wolston,* 41 id. 213; *McHany* v. *Schenck,* 88 id. 357; *Root* v. *Curtis,* 38 id. 192; *Ryhiner* v. *Frank,* 105 id. 326; *Schultz* v. *Houfes,* 96 id. 335. ·

The money paid by Dinsmoor was Bressler's money, and the payment was a payment by the latter. *Poole* v. *Marshall,* 48 Ill. 441.

The lien of a judgment attaches to whatever interest in realty, the record, at the time of its rendition, discloses as

being in the judgment debtor.   *Buggy Co.* v. *Graves,* 108 Ill. 459;  *Warder* v. *Cornell,* 105 id. 170.

Creditors are within the Registry act, whether by mortgage or judgment.   *McCormick* v. *Wheeler,* 36 Ill. 117.

Creditors and subsequent purchasers are bound only by the record.   *Warder* v. *Cornell,* 105 Ill. 179;  *Root* v. *Curtis,* 38 id. 193;  *Massey* v. *Westcott,* 40 id. 160;  *Porter* v. *McNabney,* 77 id. 235.

When Martin purchased under his judgment, the records showed the Ætna mortgage released by the mortgagee.   Why is he not protected by the Recording act?  *Buggy Co.* v. *Graves,* 108 Ill. 462.

Messrs. J. & J. DINSMOOR, for the appellee:

The right of subrogation does not grow out of any contract between the parties to that effect, but is an inherent or natural equity.   *Deering* v. *Lord Winchelsea,* 1 Cox, 318;  *Conway* v. *Parkman,* 24 Miss. 665;  *Salmon* v. *Slaggett,* 3 Bland's Ch. 173.

That a purchaser of land paying off a prior lien thereon may be subrogated to such lien, even as against an intervening incumbrance, see *Towle* v. *Hoit,* 14 N. H. 61;  *Bell* v. *Woodward,* 34 id. 90;  *Forbes* v. *Moffatt,* 18 Ves. 384;  *Vanderkemp* v. *Shelton,* 11 Paige, 28;  *Young* v. *Morgan,* 89 Ill. 200;  *Beaver* v. *Slanker,* 94 id. 175;  *Kinney* v. *Knoebel,* 51 id. 126;  *Taul* v. *Epperson,* 38 Texas, 492;  *Barr* v. *Patrick,* 52 Iowa, 704;  *Rodgers* v. *McCluer,* 4 Gratt. 81;  *Tyrrell* v. *Ward,* 102 Ill. 29.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

On March 21, 1881, Peter Bressler made three mortgages, which were recorded on May 5, 1881, to the Ætna Life Insurance Company, of Hartford, Connecticut, one to secure a principal note for $8200, one to secure a principal note for $6000, and one to secure a principal note for $6500.   The

notes were of even date with the mortgages, were due by their terms July 1, 1886, and drew seven per cent interest, payable on July 1 in each year. The coupons for interest from July 1, 1881, were each for $574 on the note for $8200, $420 on the note for $6000, and $455 on the note for $6500, the interest on all the notes after maturity being eight per cent. The mortgage for $8200 was secured on the south-west quarter of section 7 ($166\frac{22}{100}$ acres), the north-west quarter of section 18 ($168\frac{67}{100}$ acres), and part of the south-west quarter of section 18 ($76\frac{85}{100}$ acres), containing in all over 410 acres, all in town 21, north range 7, east of the fourth principal meridian, in Whiteside county. The $6000 was secured on part of the south-east quarter of section 7 (145 acres) and a part of the north-east quarter of section 18 (150 acres), in the same township. The $6500 mortgage was secured on part of the north-west quarter of section 17 ($147\frac{75}{100}$ acres), the south-west quarter of section 8 (160 acres), and part of the south-east quarter of section 8 (5 acres), also in the same township. The insurance company filed a bill to foreclose these mortgages in the United States Circuit Court for the Northern District of Illinois, and a foreclosure decree for the sale of all the foregoing premises was therein entered on January 3, 1883; but the land, covered by the $8200 mortgage, was decreed to be sold to pay the amount due thereon, and so, the lands covered by the $6000 and $6500 mortgages, respectively, were to be sold separately to pay the respective amounts due thereon.

On May 20, 1881, Bressler made another mortgage to Adam Smith, which was recorded May 21, 1881, covering all the lands described in the three mortgages to the insurance company, to secure four notes, one for $1500, due on or before eighteen months, one for $1500, due on or before two years and six months, one for $927.91 and one for $700, each due on or before four years and six months after date, amounting in all to $4627.91. The two $1500 notes were assigned to Henry Smith.

On March 15, 1883, John Martin recovered, in the circuit court of Whiteside county, a judgment for $3395 against Bressler, upon which an execution was issued April 3, 1883, and levied, on June 13, 1883, upon the 220 acres, released from the mortgage for $8200, and conveyed to James Dinsmoor, as hereinafter stated, and also upon an undivided one-third of block 43 in Sterling. All the property, so levied on, was sold by the sheriff to Martin on July 14, 1883, for $3535, being the amount of debt, interest and costs, and the execution was returned satisfied and certificates of sale issued to Martin. The Sterling lot was separately sold for $1500, and the 220 acres were sold for $2035, and a separate certificate was issued for the latter.

On March 8, 1883, James Dinsmoor bought of Bressler for $7700 lot 2 of the south-west quarter of section 7 ($86\frac{22}{100}$ acres), lot 2 of the north-west quarter of section 18 ($88\frac{67}{100}$ acres) and lot 2 of the south-west quarter of section 18 ($45\frac{11}{100}$ acres), making in all 220 acres, and being a part of the 410 acres, or thereabouts, covered by the mortgage for $8200. Bressler and wife executed their deed of the 220 acres to appellee on March 8, 1883, and the purchase was really made on that day, although the deed was not recorded until March 23, 1883, and the money was not actually paid over to the company until March 26, 1883. The proof shows, that, on March 8, 1883, appellee deposited $7700 in certain national banks in Sterling, for which certificates of deposit, that were afterwards delivered to the company's agents, were issued to him; and, on that day, Adam Smith executed to appellee, for an expressed consideration of $1000, a release of his mortgage upon the 220 acres, which release was on the same day placed in the hands of Reed, cashier of one of the banks, to be delivered to appellee "on his return from Chicago, with a release of mortgage of the Ætna Life Insurance Company on" the 220 acres, but which was never delivered by Reed to appellee, and was afterwards surrendered

to Adam Smith on June 30, 1884. The appellee had prepared a release of the mortgage for $8200 to submit to the company for their execution, but they were not satisfied with the description of the property therein, as it did not correspond with the description in their mortgage. A new release had to be obtained, which was executed in Hartford, Connecticut, on March 22, 1883, and recorded in Whiteside county on March 27, 1883. The objection of the company to the release, submitted to them, caused a delay, during which the Martin judgment was rendered.

Upon being paid the $7700, the insurance company vacated its decree in the United States Court, and dismissed its proceedings, brought to foreclose its three mortgages. After this vacation and dismissal, the company held the mortgages, revived from their merger in the decree, and the matter stood, as though no proceedings had been begun to foreclose, except that court costs and expenses had accrued. Dinsmoor paid for the 220 acres by assuming and paying the $7700 on the incumbrance upon the 220 acres and other lands included in the decree. Of the $7700, the sum of $4400 was credited on the principal note for $8200; two coupons of $574 each, belonging to that note, were taken up, and the balance was applied upon the two mortgages for $6000 and $6500, and in discharge of costs and expenses, incurred in the foreclosure proceeding. The testimony shows, that the insurance company insisted upon applying the $7700 in this manner, instead of crediting it all upon the mortgage for $8200, and that Dinsmoor was obliged to submit to such application, in order to get a release of his 220 acres.

The original bill in this case was filed by Henry Smith against Bressler, Adam Smith, Dinsmoor, Martin, and others, to foreclose the mortgage to Adam Smith. Dinsmoor answered, and filed a cross-bill, setting up substantially the facts here recited, and praying that he might be subrogated to the rights of the insurance company, and be declared to have the first

lien on the lands bought by him for $7700 and interest, at six per cent, from date of payment, and that the rights of Martin should be decreed to be subject to the prior liens of himself and the Smiths, and that the Martin sale and certificate of purchase should be set aside and cancelled.

The proofs further show that, on March 21, 1883, Bressler executed a mortgage, which was recorded March 27, 1883, to Dinsmoor, upon the undivided one-third of said block 43 in Sterling, to secure Dinsmoor against the Smith mortgage, so far as the latter rested upon the 220 acres. The testimony tends to show that the Sterling property was worth about $3000.

The decree of the circuit court of Whiteside county was in accordance with the prayer of the cross-bill. The Appellate Court affirmed the decree of the circuit court, except that Dinsmoor was only allowed to be subrogated to the rights of the Ætna Insurance Company, to the extent of that portion of the $7700, which was applied on the mortgage for $8200 and to the extent of such portion of the costs and expenses of the United States foreclosure proceeding, as properly belonged to the mortgage for $8200.

Dinsmoor, the appellee, was entitled to be subrogated to the rights of the Ætna Life Insurance Company to the extent hereafter stated. When the Smith mortgage was executed, the mortgage of the company for $8200 was already a subsisting lien upon the 220 acres. Smith took subject to a prior lien. His security was upon a mere equity of redemption.

When the judgment was rendered in favor of Martin, on March 15, 1883, the mortgage of the company, or the decree in which it had been merged, was still a subsisting lien on the 220 acres. As judgment creditor, Martin occupied the same position, as though he had been a subsequent purchaser. He took subject to two liens, that were prior to his own, the mortgage to the company, and the mortgage to Adam Smith. His security was upon an equity of redemption, already twice

incumbered. Appellee was under no obligation to make the securities of Smith and Martin more valuable than they were, when Smith and Martin accepted them. He purchased 220 acres of Bressler, and agreed to apply $7700 upon the insurance company's mortgage, as the consideration for such purchase. He was not bound to pay up a mortgage and have it discharged for the benefit of others. It was not his duty to do so, and it can not be presumed to have been his intention. It could make no difference to Smith and Martin, whether the lien, that was ahead of their liens, was owned by the insurance company, or by Dinsmoor. The doctrine of subrogation, enforced in behalf of Dinsmoor, merely changed the ownership of the prior incumbrance,—merely transferred that incumbrance from one owner to another. Such change and transfer did not make the securities of Smith and Martin any worse than they were before. The facts here are similar to those in *Young* v. *Morgan*, 89 Ill. 199, and the principles, announced there, are applicable to this case.

It is said, that, on June 13, 1883, when Martin's execution was levied on the 220 acres, the release had been recorded, and the 220 acres were shown by the records to be free of the lien of the company's mortgage. If this were material, it might be said in reply, that, on June 13, 1883, the deed from Bressler to Dinsmoor was also on record, and had been recorded, before the release was recorded. The deed was filed for record on March 23, 1883, and the release not until March 27, 1883. But the rights of Martin, under his judgment, are fixed by the date of the rendition of the judgment, and not by the date of the levy. If the release of the 220 acres from the company's mortgage or decree had been filed for record, before the judgment was rendered, then a different question would be presented.

It can make no difference with appellee's right to subrogation, that he took a mortgage on block 43 in Sterling, to protect himself against the mortgage of Adam Smith. Although

the insurance company executed a release of the mortgage for $8200, so far as it was a lien on the 220 acres, to Bressler, instead of making an assignment to appellee, yet, under the circumstances of this case, equity will regard appellee as the assignee of that mortgage *pro tanto*, and the lien of the Smith mortgage was none the less subject to the lien of the company's mortgage, because the company, or its equitable assignee, happened to hold some additional or collateral security. But the evidence shows, that the undivided one-third of block 43 was levied on under the Martin judgment and sold to Martin at sheriff's sale for $1500. This levy and sale made Martin the owner of the property if there was no redemption. The mortgage, given by Bressler to Dinsmoor on the one-third of block 43 was not executed until March 21, 1883, and was not recorded until March 27, 1883. There is no evidence, that Martin had any actual or constructive notice of it prior to March 15, 1883, when his judgment was rendered; therefore the judgment would hold Bressler's interest in the block against appellee's mortgage thereon.

It was not error for the circuit court to cancel by its decree the certificate of purchase of the 220 acres issued by the sheriff to Martin. The mortgage on the land, bought by appellee, had no existence in law, after the release by the company, and with that certificate, Martin could obtain a sheriff's deed, that would be a cloud upon appellee's title. Such a cloud was removed by the decree in *Young* v. *Morgan*.

The appellee, however, is only entitled to charge against the land, purchased by him, such proportion of the $7700, as was applied on the mortgage for $8200. The decree in his favor should not embrace the portion, which was credited on the mortgages for $6000 and $6500 respectively. Where a purchaser or junior incumbrancer is given the right of subrogation, it must be in a case, where the lien discharged rests upon the land purchased or covered by the junior incumbrance, and not upon some other land. Appellee can not, by

paying other debts of Bressler, consolidate such payments with the payment made on the land bought by him. The company, having applied $4400 on the note for $8200 there remained $3800 due on that note. This $3800 was secured on the balance of the 410 acres, embraced in the mortgage for $8200 and not sold to appellee. If appellee charges the 220 acres with $7700, this, added to the $3800 for which the company held a mortgage on the 190 acres, would make a total incumbrance of $11,500 on the 410 acres. This would be making a new mortgage for the principal sum of $11,500, whereas Bressler only mortgaged the 410 acres for the principal sum of $8200. Appellee, however, is entitled to interest, at the rate of six per cent per annum from the date of payment, on the principal and interest paid by him on the $8200 mortgage, and on such proportion of the costs and expenses of the foreclosure proceedings, as properly belongs to that mortgage.

The decree of the Appellate Court is reversed, and the cause remanded to the circuit court with directions to enter a decree in conformity with this opinion.

*Decree reversed.*