## FRANK S. BRESSLER ET AL.
### V.
## JOHN MARTIN AND ADAM SMITH.

*Mortgages—Foreclosure—Cross-bill— Setting Aside Satisfaction of Judgment—Res Adjudicata—Estoppel—Practice—Pleading—Mortgagee—Privilege of Declaring Whole Indebtedness Due on Default as to Part—Costs—Relinquishment of Part of Premises from Lien.*

1.  Upon a bill filed by one of appellees to have the satisfaction of a judgment against one of appellants set aside, it is *held:* That the matter was not *res adjudicata* by reason of the former refusal of a court of law upon motion of another party to grant the relief now sought, nor by reason of the omission of the complainant to ask and obtain the same relief in a prior foreclosure suit relating to substantially the same subject-matter in which he was a party.

2.  Upon the case presented, the judgment debtor was equitably estopped from opposing the setting aside of the satisfaction of the judgment against him.

3.  The evidence is sufficient to show that a sale from Bressler to his son of the land in controversy was fraudulent and void as to creditors, the son having actual knowledge that the father was making the sale to defraud creditors and having constructive knowledge of Martin's rights.

4.  A clause in a mortgage providing that on default in the payment of any part of the notes thereby secured the entire interest and principal should become due at the election of the mortgagee, is for the benefit of the mortgagee, and he is not bound to take advantage of it. Therefore, where, on default of payment of one note, the mortgage was foreclosed as to that, the mortgagor can not afterward allege that suit on another note is barred because the mortgagee might, had he so elected, declared it due and sued upon it in the first foreclosure suit.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Whiteside County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. C. L. SHELDON and JARVIS DINSMOOR for appellants.

The court erred in vacating the satisfaction of the Martin judgment. This was error for the reason that this matter had already been litigated, or might have been, in the prior proceedings, and had therefore become *res adjudicata*.

As to this question, the record shows that after Martin had caused the Dinsmoor land to be sold, and had bid it in to satisfy his execution, and the execution was returned satisfied, Dinsmoor, about December, 1883, caused the case of John Martin v. Peter Bressler to be re-docketed, and filed his motion in writing thereon, praying the court to set aside said sale of Martin under his said execution; that Peter Bressler appeared and filed his affidavit in support of said motion, and John Martin appeared and filed his affidavit, among others, resisting said motion; that afterward, at the January term of said court, 1884, and before said motion was disposed of by the court, Dinsmoor filed an amended motion, in which he stated that the purchase money for the land bought of Peter Bressler had been applied on the Ætna Insurance Company mortgage on the land. Here was a case pending in a court of competent jurisdiction involving the question of setting aside the sale and vacating the satisfaction of Martin's judgment. Martin then knew all the facts and was bound to know the law—that Dinsmoor would have the right to be subrogated to the rights of the Ætna Insurance Company. Dinsmoor could not renew his motion to set aside the sale in a court of law. If Dinsmoor would be estopped, then, as a necessary and logical deduction, John Martin would likewise be precluded. It follows as a matter of course, if John Martin is estopped from again litigating these matters on the law side of the court, he is also estopped from applying to a court of equity. Watson v. Reissig, 24 Ill. 281; Mason v. Thomas, 24 Ill. 285; 1 Herman on Estoppel, Sec. 399.

When Martin filed his answer to Dinsmoor's cross-bill in the former suit, he was of the opinion that this question had been finally and conclusively adjudicated, both as to himself and Dinsmoor. He was then in possession of all the facts upon which Dinsmoor relied for subrogation, and he must be presumed to have known the law would place Dinsmoor in the shoes of the Ætna Insurance Company; yet, notwithstanding all this, he still insisted these matters were *res adjudicata.* At that time he thought it was for his interest to insist and claim that the matters involved in this case had been adjudi-

cated; but the court, having taken a different view of the law from what he entertained as to Dinsmoor's right to subrogation, he now thinks these matters are not adjudicated.

If it be said that the decree in that case set aside the sale and canceled the certificate of purchase to Martin, and that thereby Martin lost the benefit of his purchase, we answer that a proper construction of that decree shows that it merely postpones Martin's rights to those of Dinsmoor. It in express terms gives Martin, as a defendant, the right to redeem the land, by paying the amount allowed Dinsmoor, and the statute also allows any defendant the right to redeem. It is clear, then, that Martin had the same right of redemption from the amount of Dinsmoor's lien as he would have had, had he been compelled to redeem from the insurance company. If it be said, at the time Martin made his bid, he did not know that the purchase money had been applied upon the Ætna Insurance Company's mortgage upon this land, we reply that he knew enough facts to have put him upon inquiry. Is Martin, then, to have relief in this case because he did not know the law? If so, upon what principle? Is it because the law question involved was a difficult one to decide? If so, where will the court draw the line?

Not only has this matter been adjudicated upon the law side of the court, but it has likewise been adjudicated in the subsequent chancery proceeding in the case of Henry Smith v. Peter Bressler, John Martin, James Dinsmoor et al.

The bill was filed by Henry Smith to foreclose the first $1,500 note described in the mortgage in this case. John Martin, James Dinsmoor, Peter Bressler et al. were made defendants and answered the original bill. Afterward James Dinsmoor filed his cross-bill, making Smith and Martin defendants thereto, who answered. Replications were filed and the original and cross-bills heard together. Peter Bressler, John Martin, Henry Smith and James Dinsmoor all appeared by counsel, and a decree was rendered settling the rights of all the parties to the case. John Martin and James Dinsmoor were parties to both the original and cross-bills, and while Peter Bressler was not made a formal party to the

cross-bill, yet he appeared in the case by counsel, and he was treated the same as though he had been made a formal party defendant to the cross-bill. But if it could be held otherwise Dinsmoor was a party to the cross-bill, and the grantee of Peter Bressler of a portion of the premises to be affected by the decree. Dinsmoor is a privy in estate with Peter Bressler, and whatever would bind Dinsmoor would likewise bind Bressler. Herman on Estoppel, Vol. 2, Secs. 586 and 587.

We insist, therefore, that John Martin, Peter Bressler and James Dinsmoor were either parties to both the original and cross-bills in that case, or in privity with those who were parties, and are not bound by the decree rendered therein. If that is not so, then the decree entered by direction of the Supreme Court is erroneous for want of proper parties defendant to the cross-bill.

Mr. Dinsmoor, in his cross-bill, asked to be subrogated to the rights of the insurance company for the amount he had paid, to obtain a release of its mortgage on the land he had purchased from Bressler, and to make the subrogation effectual he also asked that the sale and certificate under the Martin execution might be set aside and canceled. John Martin answered, denying his right to subrogation, and also denying his right to have the sale and certificate canceled, and also setting up and claiming in his said answer that the sale and satisfaction of the judgment had already been litigated in said motion of Dinsmoor.

Here the question of setting aside the sale and canceling the certificate was directly in issue, and as a necessary consequence the satisfaction of the judgment was also in issue, because the sale and satisfaction of the judgment grew out of the same transaction.

If, however, it could be held that this matter was not actually litigated in the former case, then we claim it might and should have been, and therefore the same result follows as though it had been actually litigated. Herman on Estoppel, Vol. 1, Sec. 125.

The satisfaction of the judgment was part and parcel of the sale. It was produced by the sale. Without the sale there

would have been no satisfaction of the judgment. The bill alleges, in this case, that because the sale was set aside the complainant is entitled to have the satisfaction vacated. The very case they make by their bill shows that the satisfaction of the judgment was involved in and connected with the sale. And the Supreme Court have decided, in a case like this, that the court has the power to decide the question without a cross-bill. Hubbell v. Canady, 58 Ill. 428.

"*Res adjudicata* embraces not only what was actually determined, but extends to every other matter which, under the issues, the parties might have litigated in the case." Herman on Estoppel, Vol. 1, Secs. 125–7; Hamilton v. Quimby, 46 Ill. 94; Rogers v. Higgins, 57 Ill. 247.

It is impossible to avoid the conclusion that the satisfaction of the judgment was properly involved in the former case, and that it might have been raised and determined in it. It was so held in 58 Ill. above cited, in a case like this, and unless that case is to be overruled it is decisive of the case at bar. To the same effect are the cases of Case v. Hicks (Iowa), 40 N. W. Rep. 75; Lamb v. McConkey (Iowa), 40 N. W. Rep. 77; Pierro v. St. Paul & N. P. R. R. Co., 40 N. W. Rep. 520; Herman on Estoppel, Vol. 1, Sec. 242; Kelly v. Donlin et al., 70 Ill. 384; Hanna v. Read, 102 Ill. 596; Mueller v. Henning, 102 Ill. 646; Tilley v. Bridges, 105 Ill. 337; Ruegger v. I. & St. L. R. R. Co., 103 Ill. 456; Neff v. Smith, 111 Ill. 110; Bennett v. Star Mining Co., 119 Ill. 9; Harmon v. Auditor, 123 Ill. 122; Newberry v. Blatchford, 106 Ill. 584.

If this question is not settled by that suit, what is settled? Are there any other questions pertaining to that land between these parties that are not settled? If this satisfaction is set aside, and the judgment reinstated, it becomes a *lien*, not only upon the other land of Peter Bressler, but also upon the Dinsmoor land; and it thus comes to pass, that while the Supreme Court imagined that it had settled the *status* of that land and determined the rights of these parties, that the object and purposes of that litigation is defeated.

Messrs. J. E. McPHERRAN and C. J. JOHNSON, for appellee John Martin.

The court could not in the former case set aside the *satisfaction* without a cross-bill by Martin praying for such relief, to which Peter Bressler would be a necessary party.   It in no way concerned Dinsmoor to set aside the satisfaction of the judgment.   Bressler, on that question, was the interested party, but was not made a party to the cross-bill, and was not involved in the proceedings, and his right could not be passed upon in that case.   Prentice v. Kimball, 19 Ill. 323.   A defendant, to get affirmative relief, must file a cross-bill, except where the anterior proceedings sought to be enforced are a nullity, like the sale of a homestead. Hubbell v. Canady, 58 Ill. 425.

Martin, in his answer to Dinsmoor's cross-bill, traversed the truth of the facts pleaded by the bill.   He would have held an anomalous position, while, in traversing the truth of the facts pleaded, he had filed a cross-bill asking to have the satisfaction of the judgment set aside.   But even this would not have been availing, for Peter Bressler alone being interested in that question, it could not have been done without making him a party.   Prentice v. Kimball, *supra,* says that it is clear that the question of satisfaction was the only one that the Supreme Court could not pass on in such a case.   Martin was not a voluntary party.   If he had taken the initiative in a bill and sought relief as to that question, it might not arise again in that case.   It may be remarked, also, that Bressler was not a party to the original Dinsmoor bill; that Dinsmoor is not a party to this bill.   In the former suit the subject matter was the 220-acre tract; in this suit that tract is expressly excluded.   Neither the parties nor the subject-matter involved in the former suit are the same as are involved in this suit, nor are Dinsmoor and Peter Bressler privies in interest or estate in this case.   Freeman on Judgments, Sec. 478, *et seq.;* Watson v. Reisig, 24 Ill. 236; Hughes v. Streeter, 24 Ill. 648; Whiting v. Bradley, 2 N. H. 79; McGuire v. Marks, 28 Mo. 193; Adams v. Parmenter, 5 Con. 280; Peppers v. Ellwood, 4 Denio, 165; Townsend v. Smith, 21 Texas, 287; Ritter v. Henshaw, 7 Iowa, 98; Tudor v. Taylor, 26 Vermont, 144; Cross v. Zane, 47 Cal. 602.

The facts of the case at bar are such that the law, as laid down in the cases cited, can have no application to the case. There ought to be no controversy about the rule, but there may be room for debate as to its application to the case under consideration. There is no evidence in the record which indicates that the parties to the cross-bill had any desire or purpose to have the satisfaction of the judgment set aside. To constitute a bar by former adjudication it must appear from the pleadings that the grounds for relief or defense set up and passed on in the first case, are the same as those sought to be litigated in the second case; that the second action or cause for relief is identical with the claims or demand set up and litigated in the first action.

In all cases, therefore, where it is sought to apply the estoppel of a judgment, rendered upon one cause of action, to a matter arising in a court upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action—not what might have been thus litigated and determined. Only in such matters is the judgment conclusive in another action. Campbell v. Butts, 3 N. Y. 173; Gardner v. Buck, 3 Cow. 120; 4 Otto, 351; Mallory v. Horan, 49 N. Y. 111; Pennington Paper Co. v. Dougherty, 81 N. Y. 474; McEwen v. Bigelow, 40 Michigan, 115; Jacobson v. Miller, 41 Michigan, 90; Phillips v. Jamieson, 51 Michigan, 153.

As to the rule of law there can be no doubt; but its application is a question for the court to determine, not always free from difficulty. We think that the application of the rule is limited to such matters as were necessarily involved in the former litigation, which, if again considered, would involve an inquiry into the merits of the former finding. Freeman on Judgments, 254 to 260.

Was the satisfaction of the Martin judgment in issue in the former suit, or determined by the court therein, or was it necessarily involved? Peter Bressler was not a party to the cross-bill against Martin. The controversy in that bill was, whether Dinsmoor was entitled to subrogation under the Ætna mortgage. Martin contested that right, setting up the pro-

ceedings under his judgment; Dinsmoor sought, as auxiliary to the relief prayed for, the cancellation of the certificate of sale and the vacation thereof. How could Martin with consistency ask that the satisfaction of his judgment should be set aside? The thing to be determined was, whether or not his sale should be vacated. If it had resulted in his favor he could not have had the satisfaction vacated, nor would he have asked for it; he would have got what he supposed he was buying, an equity of redemption, subject to the Smith mortgage *only*—a satisfaction in law as well as in fact.

If Martin should apply to a court of law to have the satisfaction vacated, he would be met with the plea that that question had been passed on in that forum, for there he had resisted successfully the vacation of his sale under the judgment. It is true that some of our decisions recognize the power of a court at law to set aside the satisfaction of a judgment; but it has also been held that, if a party has been prevented, by accident and by circumstances over which he had no control, and which reasonable effort on his part could not have prevented, he may resort to chancery to secure relief, as was held in Ballance v. Loomis, 22 Ill. 84; see Frazer v. Miller, 16 Ill. 48; Oard v. Oard, 59 Ill. 40.

Nor do the proceedings in the motion bar Martin in this case. They did not operate as a bar against Dinsmoor, as his claims were equitable—not cognizable at law, and for like reason they can not operate as a bar as against Martin. The equitable grounds set up in Martin's bill did not obtain in the motion. Does the litigation in this case "involve an inquiry into the merits" of the motion case? We presume that no one will claim that it does. We have elsewhere shown that the proceedings in the Dinsmoor cross-bill can not operate as a bar to the relief sought by Martin.

But it is urged that the right to redeem, as a purchaser of the equity of redemption of Peter Bressler, is the only right remaining to Martin—a right incumbered since the sale by a latent equity under decree of court, so as to make it valueless. The statute names two classes of persons permitted to redeem. Under the decree Martin is embraced in neither class, for the

decree cancels his sale. How can he be regarded as a pur-
chaser of Peter Bressler's equity of redemption, and as stand-
ing in his shoes, under a sale that has been wiped out? Has
Bressler been deprived of his right to redeem by the sale?
The sale does not exist. If the sale does not exist how can
Martin be regarded as a purchaser of such equity? How a
man can be deemed a purchaser of land, who has had his sale
canceled by the court, is not clear. How a man can be said
to have the capacity to redeem, without equitable relief,
under a judgment satisfied by a sale subsequently vacated
and held for naught, has not been explained, nor can it be.

Messrs. MONAHAN & WARD, for appellee Adam Smith.

LACEY, J. The appellee, Adam Smith, on the 30th of
August, 1887, began a suit to foreclose a mortgage of May,
1881, given by Peter Bressler and wife to Adam Smith, con-
veying all the lands in the mortgages, which may be hereafter
described, to secure $4,627.91, the balance of which, that
remained unsatisfied, having been re-assigned to the said com-
plainant, Adam Smith (it having once been assigned to Henry
Smith), making, in this foreclosure suit, the appellants and
others, and appellee John Martin, parties respondent. To
this bill John Martin answered, and then filed his cross-bill,
making the other respondents in the court below, as well as
Adam Smith, parties defendant. Appellee Martin sought
by this cross-bill to procure the revival of a certain judg-
ment which he had procured in the Circuit Court of
Whiteside County for $3,395 and costs, on March 15, 1883,
against Peter Bressler, which had been satisfied in part by a
sale by the sheriff, on execution, of 220 acres of land of the
latter, to the amount of $2,035, on July 14, 1883, and the
balance satisfied by the sale of other real estate not involved
in this controversy. The court below decreed satisfaction to
be set aside, and the judgment, so far as the amount bid on
the above named land, should be revived, and execution issue
thereon, and the lands of appellant Frank Bressler sold to
satisfy the same. The cross-bill also seeks to set aside the
deed from Peter Bressler and wife to his son, Frank S.

Bressler, for the real estate involved herein of date of July 1, 1888, and subject it to the satisfaction of the judgment thus revived. The mortgage in this case sought to be foreclosed by Adam Smith was a prior lien to the judgment of appellee Martin, but appellee Smith was not in any way contesting the right of appellee Martin to the relief he seeks here, nor was the latter contesting the priority of Smith's mortgage.

We will first notice the defense set up by appellants to the relief sought by appellee Martin in his cross-bill. It appears from the evidence and the pleadings in the case that prior to the Smith mortgage, and also long prior to the date of the recovery of appellee Martin's judgment, to wit, March 1, 1881, Peter Bressler had mortgaged the land in question in this suit, as well as the 220 acres afterward deeded to Dinsmoor, in all 1,040 acres, which will be mentioned hereafter, by three separate mortgages, to the Ætna Life Insurance Company, to secure a large sum of money. James Dinsmoor, on March 7, 1883, had purchased the 220 acre tract of land from Peter Bressler for the sum of $7,700. The money so agreed to be paid to Bressler for the 220 acre tract of land was, by agreement between Dinsmoor and Peter Bressler, to be applied in satisfaction of the Ætna mortgage so far as it would go, which covered this land, with others, which was done. The money was sufficient to procure the release of the Ætna mortgage on the land so purchased and a considerable sum beside, but the deed from Peter Bressler to James Dinsmoor was not placed upon record till March 23, 1883, and the release of the Ætna Company not till March 27, 1883, leaving the appellee's judgment a few days in priority in date to the record of the deed and the release. Thereupon appellee Martin, thinking he saw an opportunity, by reason of the priority of his judgment to the record of Dinsmoor's deed and by reason of the release of said mortgage, to make his judgment, caused execution to issue thereon April 3, 1883, and on June 13th said execution was levied on the land purchased by Dinsmoor, and on the 14th of July of the same year the sheriff sold the land to Martin for $2,035, and issued to him a certificate of purchase and returned the execution satisfied.

At the December term, 1883, Peter Bressler moved the court to set aside the levy and sale of said Martin to the end that Peter Bressler's interest in the land other than that sold to Dinsmoor, being about 820 acres, might be first sold; appellee Martin resisted the motion and the court refused to grant it. On the 20th November, 1883, the day on which the second of the Smith notes became due, Henry Smith, the assignee of the notes, filed a bill to foreclose them as to the first $1,500 note falling due, making Peter Bressler and Adam Smith, John Martin (appellee) and James Dinsmoor respondents. Peter Bressler, appellee Martin and James Dinsmoor answered, and afterward James Dinsmoor filed his cross and amended cross-bill against Henry and Adam Smith and appellee Martin, setting up the facts in reference to his purchase of the 220 acres of land from Peter Bressler and asking to be subrogated to all the rights of the Ætna Life Ins. Co. under its said mortgage to the said 220 acres; that Martin might be decreed to hold subject to the rights of Dinsmoor so subrogated as aforesaid and that his certificate of purchase might be canceled. The court upon hearing decreed the foreclosure of the Smith mortgage in that suit ($1,633.60 being due) and subrogated Dinsmoor to the full amount of $7,700 paid by him for the land, to all the rights of the Ætna mortgage as against Smith and against appellee Martin, and also vacated the sheriff's sale and appellee Martin's certificate of purchase. Upon appeal by Smith and Martin to the Appellate Court the decree of the Circuit Court was modified as to amount allowed to be subrogated, and upon further appeal to Supreme Court the amount was further changed and subrogation allowed to the extent of $5,658.32, and the Circuit Court directed to enter a decree in accordance with the opinion. See, 16 Ill. App. 115; Smith v. Dinsmoor, 119 Ill. 656. On the 20th day of December, 1887, in accordance with the direction of the Supreme Court, the Circuit Court rendered the decree as ordered, annulling the sale and certificate of purchase of appellee. On February 2, 1883, the Dinsmoor 220 acres were sold under decree to James Dinsmoor for $7,316.78, being in full of his debt, interest and costs, and being nearly, if not quite, the full

value of the land. The appellants insist that the judgment of
the court on the motion by Peter Bressler to set aside the sale
is a bar to the relief asked by the cross-bill herein, and besides,
as the judgment was not revived by the decree of the court
December 20, 1887, in case of Smith et al. v. Dinsmoor, on
remanding order from the Supreme Court, the appellee Mar-
tin is now estopped to ask any further relief; that he can
not now be heard to complain that his judgment is not
revived. We can not agree with either of these propositions.
In regard to the first point we are of opinion that it is not an
estoppel for the following reasons : the causes for which the
levy and sale were finally set aside were not urged in the
motion of Peter Bressler to set aside the sale, and he and the
appellee Martin were the only proper parties to such motion
as to the record, and the equities urged by Dinsmoor in his
cross-bill for setting aside the sale did not exist in favor of
Peter Bressler. He was indifferent. It would be improper
to admit suggestions upon the hearing of that motion in
regard to the equitable rights of third parties. In order to
give it—the court—jurisdiction of such matters, equity must
be resorted to.

By the decree of the Circuit Court of December 20, 1887,
referred to, made in the case of Smith v. Dinsmoor on the cross-
bill of Dinsmoor against Martin, the sale and certificate of
purchase of Martin was wholly set aside and nullified, and this
in accordance with the mandate of the Supreme Court. The
court says, when commenting on that subject in its opinion :
" It was not error for the Circuit Court to cancel by its decree
the certificate of purchase of the 220 acres issued by the
sheriff to Martin. The mortgage on the land bought by
appellee had no existence in law after the release by the
company, and with that certificate Martin could obtain a
sheriff's deed, and that would be a cloud upon appellee's title.
Such a cloud was removed by decree in Young v. Morgan,"
89 Ill. 199.

Is Peter Bressler estopped by this decree in equity and
good conscience? We think he clearly is. In the first place,
he was not a party to this cross-bill of Dinsmoor, and for that

reason he can not be heard to insist that the decree, while the court had jurisdiction, should have gone further and revived the judgment; yet he was privy in such a manner by his deed to Dinsmoor as to estop him from denying the justice of Dinsmoor's decree as to the vacation of the sale. Let us look at the equities for a moment; Bressler sold the land before the judgment was obtained and received full value for it, and authorized the purchase money to be paid out on former indebtedness which were prior liens on the same land, and gave a warranty deed to Dinsmoor, but the deed was not recorded till after the judgment. By means of this deed and these incumbrances, in a suit that was litigated through all the courts, the appellee Martin's certificate of purchase was set aside. By these acts of Peter Bressler, confirmed by the decree of the court, there was no equity of redemption remaining to Martin. Peter Bressler received the value of the land when he took the full purchase price and authorized, by his acts, James Dinsmoor to claim the full title to the land which he warranted. If the sale of appellee Martin had been allowed to stand, and Martin, after acquiring a deed, had redeemed from Dinsmoor's lien, the latter would not have acquired the title that Bressler had conveyed to him and would have had a right of action over and against Peter Bressler on his covenants of warranty in his deed to Dinsmoor. The sale was set aside at Dinsmoor's application in spite of Martin, by equities acquired through the purchase of the 220 acres of land from Peter Bressler, the defendant in the execution. It matters not, even if the setting aside the sale of the land under the Martin execution was erroneous; Martin was bound by it, and Bressler's deed to Dinsmoor was made good. Peter Bressler must have intended by his deed to Dinsmoor to give him a complete title to the land free from any claim of Martin. It does not, therefore, lie in Bressler's mouth to say that Martin must abide by his sale and redeem from Dinsmoor's lien. There is an entire want of equity in Peter Bressler's claim that Martin's judgment of over $2,000 should be held to be satisfied. Not a dollar of his property has been applied to its satisfaction. The result has been that he

Bressler v. Martin.

sold the land Martin tried to subject to his satisfaction to Dinsmoor, and it has been freed from any claims of Martin. He seeks to accomplish his purpose of defrauding Martin out of his debt by insisting on technicalities and invoking principles of law very proper when properly applied, but which are not applicable to the facts of this case.

In regard to the claim of Frank S. Bressler that he is a *bona fide* purchaser in good faith without notice of Martin's equities and for a valuable consideration, we are constrained to say, without going into detail in respect to the evidence, that it does not support him. We think the evidence shows that his purchase was fraudulent in fact, and was made with intent of aiding his father in hindering and delaying his creditors and also with the full knowledge that the latter was making the sale for such purpose. We are also inclined to think that his purchase was made with a constructive knowledge of appellee Martin's equities.

The point urged, that the decree ordering execution to issue on the Martin judgment directed to the sheriff and he to sell thereunder was error, is not well taken. Such order might have been omitted as it could have been done without it, but as the decree must be understood to mean only that the sheriff sell according to law after proper redemption where necessary, we see no harmful error in it; and besides, Smith, appellee, is not objecting here as to such decree. Neither is Dinsmoor objecting to any supposed lien claimed to be on his land, and Frank Bressler can not complain of the sale of Dinsmoor's land. The meaning of the decree is to sell only so much of the land as is necessary to satisfy the mortgage debt.

A point is made against the decree in favor of the appellee Smith, foreclosing his mortgage for the second $1,500 note. It is insisted that the foreclosure of the first note in the first foreclosure is a bar to the foreclosure of the other note. It seems that the last note was not due if three days of grace be counted, which must be done, when the first foreclosure suit was commenced; but appellants insist that because appellee Smith took issue with their plea and did not have it set down for hearing, that he admits that the second note was

due, when it was not, in fact, at the time the first bill was filed; and this under a rule of pleading. We can not accede to this claim. The plea alleged that at the time of filing the first bill both notes were due; that there was an accounting, or should have been, in the first suit; but it will be seen that when the evidence was heard it was found the notes were not both due when the first suit was commenced. This disposes of that point. Another point is that the mortgage had a clause in it providing that in case of default in the payment of any part of said notes or the interest thereon, the entire principal and interest should become due at the election of the said party, of the second part, that is, the mortgagee. It will be seen, though, that the party of the second part never declared the last note to be due, so this clause can not avail appellants, as the condition was put in for his benefit, which he was not bound to take advantage of unless he saw proper, which he did not. As no forfeiture was declared, days of grace continued to run as before, according to law, and the terms of the note.

Another point is made, that the decree ordered the sale of all the lands, those sold by Dinsmoor (the 220 acres) included, while Dinsmoor was not a party, and also orders the sale of the same land that was sold under the former foreclosure of Adam Smith under this same mortgage. This was probably error, but as to how the sale of the Dinsmoor land could injure appellants, we are unable to see, as they have no claim to those lands, and Dinsmoor is not a party. The appellee Smith, however, has made a motion in the court here to release the lien of the decree herein, on the lots complained of by appellants, to wit: Lot two, of the southwest quarter of section seven, and lot two of the northwest quarter of section eighteen, and all of lot two of the southwest quarter of section eighteen north of Elkhorn Creek, town twenty-one, of range seven, east of 4th P. M. Also east half of the southwest quarter of section seven; east half of the northwest quarter of section eighteen; that part of the east half of the southwest quarter of section eighteen lying north and west of Elkhorn Creek; the west half of the

southeast quarter of section seven, except fifteen acres, and all that part of the northeast quarter of section eighteen lying north and west of Elkhorn Creek, all in township twenty-one north, of range seven, east of the 4th P. M., in Whiteside county, Ill. Upon consideration the said motion is allowed and the decree reversed as far as it applies to any and all the above described land, or any part thereof, and the declaration of lien is annulled.

The decree of the Circuit Court in all other respects is affirmed. The costs of this court is ordered to be divided equally between Frank S. Bressler, appellant, and the appellee Adam Smith.

SMITH, J., dissents. I think the decree both as to the original and cross-bill should be reversed and that the cross-bill should be dismissed. I agree with the majority of the court only so far as it holds that the second $1,500 note was not barred by the former suit. I, in all other respects, both as to the reasoning and conclusion of the court, dissent.