Bissell, J.
This record presents a sharply defined controversy between these parties, each of whom asserts a priority of lien by trust deed on the same property. The bank’s security antedates Kenney’s by about four years and a half, yet Kenney insists that he has the superior claim because of an attempted and fraudulent foreclosure of the first security by the trustee.
The arguments of counsel are almost wholly based on their conflicting theories respecting the effect of an indorsement of commercial paper secured by a deed of trust and the equity of a second lienor which it is said springs up and becomes superior when the holder of the first note fails to spread on the county records some transfer which shall give to the public notice of his rights.
We shall not attempt to resolve all phases of the proposition nor to reach the logical conclusions which would per *26 haps be necessary if we should decide every point collateral to the main inquiry and which under some circumstances would be legitimately connected with it. The proofs render such full discussion and decision wholly unnecessary.
In 1889 the Empire Land & Canal Company held title to a part of section 18, township 36, range 10 east. This company likewise owned a canal which supplied water to irrigate this and other lands. On the 7th of December the corporation gave its note to the Colorado Securities Company for $3,500, due the 1st of December, 1894, with interest at seven per cent. To secure this note the canal company gave a deed of trust on the land and convej'ed by an independent instrument five water rights subject to certain conditions. Henry J. Aldrich was the grantee in the trust deed and took title for the benefit of the beneficiary. He was at this time president of the Colorado Securities Company and acted for it and in its behalf. In 1890 the securities company borrowed $5,000 of the Jefferson County Bank, a corporation doing business in Golden. To secure the payment of this note, the company indorsed the note of the Empire Land & Canal Company, wrote a guarantee on the back of it, and delivered it to the bank. From time to time some payments were made by the securities company on their note and at the time of the commencement of this suit $3,400 was due on the four notes then outstanding which were secured by the indorsement of the other paper. No further recital of the situation, debt, and claim between the securities company and the bank is necessary either to the decision of the case or to the apprehension of the litigation. The note and the trust deed were delivered to the bank and remained in its possession up to the time of the trial. In May, 1894, Aldrich in the execution of a fraudulent scheme attempted to foreclose this trust deed- given by the Empire Land & Canal Company. The note had not matured and the bank did not request Aldrich to enforce the security. What he did was in the execution of his fraudulent purpose, without authority of the holder of the note, and so far as the record discloses, without the request or direction of the secu *27 rities company, the original beneficiary. Aldrich advertised the property for sale according to the requirements of the deed in the Antonito Ledger published in the county where the land was situate. On the day named for the sale the property was put up and bid off by him on behalf of the Colorado Securities Company. This fact is perhaps not immediately and directly established, but it is satisfactorily proven. Aldrich then prepared and executed a deed to the securities company. After executing the deed he went before a notary and acknowledged it, took it to the company’s office, and there held it among the company’s papers. By the sale, .if it were valid, his powers as trustee were exhausted and if any rights were acquired thereunder whatever he did thereafter he did as the president and general manager of the Colorado Securities Company. This consideration with the evidence clearly establishes the fact that the deed thus executed and acknowledged passed into the custody of the securities company and became and was a transfer to that corporation so far as any title can be said to have passed by the transaction. Some three or four days more or less after this sale, and in the further execution of his fraudulent purpose, Aldrich sent a clerk out on the street to find some irresponsible person who would execute papers which would enable him to carry out his preconceived fraud. The clerk found a convenient tool in the person of Andrew B. Duffy. As the transaction is stated by.the clerk who found this party, he went on the streets, ran across Duffy and asked him to execute some papers. Duffy agreed. The clerk promised to give him 110.00 for his part in the matter which was satisfactory to Duffy. The clerk then went to the office, prepared a warranty deed of the land from Duffy to Wilcox and a trust deed thereon to secure §4,000 evidenced by Duffy’s promissory note for that sum with coupons attached, went to the public reading room of the Markham hotel and met Duffy who executed all of these papers. The papers were then taken to the office of the securities company, and thereupon by direction of Aldrich the clerk took the deed which had been executed by *28 Aldrich, with the securities company as grantee named., erased the name of the securities company, and inserted the name of Andrew B. Duffy. This deed and these papers were after-wards recorded, together with the proof of the foreclosure. The trust deed and notes were then sent east and through the representative of the securities company in New York sold to the appellant Kenney, who paid value therefor. The notes were properly transferred. If out of this transaction a lien passed to Kenney superior to the one held by the bank Kenney has a good case and the decree is wrong. When the paper was first offered to Kenney, he declined to buy it. On further solicitation by Goodrich, the agent in New York, he was induced to purchase. According to his testimony he made no investigation respecting the circumstances of the sale, the character, or the value of the property other than an examination of the abstract furnished him and the inquiries he made of the securities company. The land was represented to him to be worth from $12,000 to $15,000, and an adequate security for the amount of the Duffy notes. The foreclosure proceedings were said to be entirely regular. Mr. Kenney never looked at the records and never saw the papers, and made no other investigation about it. The so-called abstract of title was simply a memorandum of the grant by the government to the state, from the state to the Empire Land & Canal Company, from that company to Aldrich as trustee, and the sale and conveyance by the trustee under foreclosure to Duffy. The abstract exhibited nothing but the names of the grantor and the grantees, the dates of the transfers, the description of the property by section, township, and range, with the number of acres conveyed. Under the head of remarks there are some notations of the names of persons by whom the deeds are signed and the purposes for which they were given. Under the head of “ conveyance to Aldrich as trustee,” the fact is recited that the promissory note is due December 1, 1894. The nature and character of the foreclosure, the circumstances under which it was made, or whether at the request of the holder or otherwise is not recited nor is *29 there anything in the abstract to advise the purchaser respecting the details and history of the sale. The considerations of the various conveyances are not stated, although the record shows that the deed to Duffy was for the consideration of $25.00. Kenney was of course chargeable with notice of this fact and bound to know that the transfer to Duffy was made for a nominal sum and conveyed property which was worth according to his information $12,000 or $15,000. Duffy’s deed to Wilcox was not mentioned in the abstract although it had been recorded at the time Kenney purchased the paper. Kenney made no further investigation, and relied entirely on this memorandum abstract, and on the statements of Goodrich and the letters from Aldrich. He insisted that the Empire Land & Canal Company should make a quitclaim deed to further insure his title under the foreclosure proceedings. This was not delivered to him until some time afterwards, although he was assured by Aldrich that the deed had been made and would be sent on when recorded. It was clearly establised by the testimony of the president that the bank had no knowledge of the foreclosure; that it was wholly unauthorized by-it, and that it had never requested Aldrich to enforce the security. The record does not show any request by the securities company. That corporation had nothing to do with it, except as it might be bound by what Aldrich did, who was at the time the president and general representative of this company. Since he had knowledge the company must be presumed to know what was done.
The proof of the circumstances attending the sale, the execution and delivery of the deed, its alteration, and the substitution of Duffy’s name in the instrument, with the evidence respecting His connection with the transaction was objected to by the appellant. The exception is urged as error. We have grave doubts whether the objection ought to be available under the circumstances in which it was taken and preserved. The proof was offered at the beginning of plaintiff’s case. Kenney objected because he was an innocent purchaser and could not be prejudiced by the fraud *30 of the trustee. The court stated that he was then of the opinion that the testimony was inadmissible against Mr. Kenney, but would admit the evidence and reserve his ruling. The plaintiff proceeded with this evidence which xvas not then further objected to. When the clerk Ardió negotiated with Duffy rvas called the appellant objected and noted an exception. The matter rvas not again referred to, nor rvas the court at any time during the progress of the trial or on its conclusion, asked to make a specific ruling as to the admissibility of this testimony. We are quite of the opinion that Avhen a ruling is reserved parties must obtain a direct decision if they desire to preserve the question and make it available as error, Hoxvever this may be the objection rvas •not rvell taken. It xauas an equity case triable by the court and the order of proof is of very slight conseq uence. Whether the testimony was admissible while the plaintiff Avas making out his main case, or Avhen rebuttal testimony aauas offered, is of no significance. If it Avas admissible at any stage of the trial a mistake in the order of proof could not be permitted to disturb the judgment. The plaintiff by apt phraseology alleged the fraudulent character of the sale, that Duffy Avas not a bidder, his use as an instrument to accomplish the fraud, the xvant of authority on the part of the trustee to act, and divers other matters xxdiich supported his conteixtioxx that Kenney xvas not, and under the circuixxstances could not be, an innocent purchaser. In his aixsxver Kenney set up that Duffjr Avas the purchaser at the trustees’ sale for a valuable consideration; that he obtained an indefeasible title and generally averred the bona fides of Duffy’s title as Avell as his owxx. On this plaintiff took issue. It therefore became, whether under the allegations of the complaint and the denials ixx the answer, or under the allegations of the aixsxver and the denials in the replication, an issue Axdiether Duffy acquired any title in good faith or otherwise and xxdiether this title xvas subject to the plaintiff’s equities. Such being the 'issue the court did not err in admitting the testimony.
While xve are alxvays averse to deciding an absolutely nexv *31 question where there is a point about which there can be no doubt, yet, when parties have rested their appeal on what they conceive to be the law for which they find some support in the authorities, we do not feel at liberty to disregard their argument and decide the case on another proposition, although we may regard the latter as entirely indisputable, and the other as debatable. To put the point in unmistakable terms, the bank insists that since it was the transferee before maturity of the commercial paper secured by the trust deed executed by the then owner of the property, its lien is prior botli in time and in right, notwithstanding the attempted foreclosure and that the interest which it acquired by reason of the purchase of the paper cannot be affected save by its own acts or by acts of the trustee by which it would be bound because of either consent, negligence or waiver. On the other hand, the appellant contends that the lien acquired by Kenney through a fraudulent foreclosure is prior in right though subsequent in time, and that his equity is superior to that of the Jefferson County Bank because at the time of the transfer of the note the bank took no steps to protect the interest acquired by the indorsement. It has long been a question in this jurisdiction as to the priorities of the liens of those whose securities were of different dates and the only evidence of the interest of the prior lienor was the indorsement of commercial paper. It is almost universally true that trust deeds in no manner disclose except as to the original payee of the paper, the holder of the equitable interest and the beneficiary under the deed. The notes secured by these instruments are commercial obligations which pass either by delivery or by indorsement and where the holder acquires title before maturity he takes an indisputable title. The transfer of the paper carries with it the security. This accords with the general rules governing commercial paper and is in harmony with the doctrines expressed by the supreme court in analogous cases wherein similar questions have been presented. That tribunal has always held that the debt is the principal thing and the mortgage or the trust *32 deed, the incident, and that the transfer’ of paper carries with it the interest protected and conveyed by the mortgage or by the trust deed. Thus far, however, that court has not been called upon to decide whether in order to protect the title as against any subsequent incumbrancer, the transferee must in some manner, and in some form obtain a grant or a conveyance from the original beneficiary or an assignment from the mortgagee, recording either one or both of the instruments which because of the notice which the record gives shall protect his title as against the subsequent incumbrancer or lienor. We are quite ready to recognize the fact that there are some cases which hold that a written assignment must be recorded in order to protect an assignee. There are cases which hold that where both the trustee and the beneficiary unite in releasing a lien, a subsequent lienor has the right to rely on the record and may become an innocent purchaser because of the apparently perfect chain of title thus exhibited. We are not required to express what our opinion would be under precisely those circumstances for the present case does not involve it. It has, however, been often held that where there is nothing in the statute which either compels, requires, or permits an assignment by the beneficiary to be recorded the transferee is under no obligation to either procure or record such a transfer and the record would not impute notice of his rights. Oregon, Washington Trust Investment Co. v. Shaw, 5 Sawy. 336; Reeves v. Hayes, 95 Ind. 521; Watson v. Dundee Mort. & Trust Inv. Co., 12 Ore. 474; Gordon v. Rixey, 76 Va. 694; Adler v. Sargent, 109 Cal. 42; Howard v. Shaw, 10 Wash. 151.
There is no provision in our statute which requires” or compels, or which would even permit the record of such an instrument. The note is secured by the trust deed. The beneficiary, however, who is the payee of the paper has in no general or accurate sense an interest in the title. The legal title is in the trustee for the beneficiary’s benefit. It passes entirely out of the trustor and into the trustee who holds the legal title for the benefit of the parties in interest. If *33 the trust deed be enforced and the property sold, there being no question about the regularity of the proceedings, the title will be conveyed to whomsoever may buy. But the beneficiary is without interest in the estate in the sense of having an interest which may be made the subject of conveyance or transfer under our statute. The title is in the trustee and will remain until it is divested by operation of law, or by the acts of the parties. We are therefore unable to appreciate the force of the suggestion that it was the duty of the bank at the time they became transferees of the paper to take from the Colorado Securities Company a transfer or assignment. If they had, we are unable to find any provision for the record of it. Belmont M. & M. Co. v. Costigan, 21 Colo. 471; Clay v. Stephens, 17 Colo. 489 ; Bassinger v. Spangler, 9 Colo. 175 ; Laughlin et al. v. Hawley, 9 Colo. 170.
If the premise be true, it would follow that even though the bank had procured from the securities company an assignment and had put it on record, it would not have given notice to the subsequent lienor. The bank could not thus have protected its title but would have had still to rely on the right and the interest acquired by the indorsement, and the invalidity of the acts of the trustee in his attempted foreclosure. In many states it has been holden that the mortgagee cannot release the security to the prejudice of the holder of the note who holds by indorsement before maturity. This has been adjudged in states where assignments of mortgages may be recorded. Ogle v. Turpin, 102 Ill. 148; Barbour v. Scottish-American Mortgage Co., 102 Ill. 121; Harris v. Cook, 28 N. J. Eq. 346; Black et al. v. Reno et al., 59 Fed. Rep. 917; Hutchings v. Clark, 64 Cal. 228; Stanley v. Valentine et al., 79 Ill. 544; Lee v. Clark, 89 Mo. 553; Brown v. Henry, 106 Pa. St. 262; Hull v. Diehl et. al., 52 Pac. Rep. 782.
Further and beyond all this, it is undoubtedly true and in this all the authorities agree that a trustee by written instrument is clothed with no powers save those which are expressed in the writing, and if his authority to act is in any *34 wise, or at r’l, dependent upon matters in pais, the parties dealing wit' lie trustee are bound in the one case to see that the authority is expressly given by the instrument and in the other that those facts exist which authorize the trustee to act. Shippen et al. v. Whittier, 117 Ill. 282; Williams et al. v. Peyton's Lessee, 4 Wheaton, 77 (4 Curtis’s Decisions, 349); Bomar et al. v. West, 87 Texas, 299; Land Co. v. Peck, 112 Ill. 408; Breit et al. v. Yeaton, 101 Ill. 242; 2 Perry on Trusts, §§602g, 784, 785; Equitable Trust Co. v. Fisher et al., 106 Ill. 189; McPherson v. Rollins et al., 107 N. Y. 316; Fassett v. Mulock, 5 Colo. 456; Kansas Loan Trust Co. v. Gill et al., 2 Kan. App. 488; Bresler et al. v. Martin et al., 34 Ill. App. 122.
The application of the principle is very simple. The original note was payable to the order of the Colorado Securities Company. It was secured by a trust deed on certain lands, executed by the then owner of the property and the makers of the note. The note was transferred before maturity to the Jefferson County Bank which was the holder for value and an innocent taker. The note was not due until the 1st day of December, 1894. By the terms of the instrument the only authority possessed by the trustee was one to advertise and sell the property conveyed to him on the nonpayment of the note at maturity, or on the nonpayment of the interest, when, “ at the request of the holder,” he might sell the property for the unpaid interest and the principal which at the option ■ of the holder would then become due. Of this power and the limits of it Kenney had constructive notice. He was advised by the deed that to make good title through a sale, the trustee could only act on the maturity of the paper unless there was a default in the payment of interest when on the request of the holder who should declare the whole sum due he might sell. Of this much Kenney had notice. According to the decision in the 4th Wheaton, Kenney was bound at his peril to ascertain either that the note had matured and that the trustee sold to enforce it, or that there were unpaid installments of interest, and the holder of the note had requested *35 the foreclosure. It was Kenney’s duty to see not only that the'power was granted but that the facts which authorized its exercise likewise existed. Under the proof neither existed. The note was not due and therefore the trustee had no authority to sell to enforce the payment of it, unless there had been a default in the payment of the interest, and the holder had elected to declare the whole sum due. The latter was undoubtedly a matter in pais. The logical deduction is that as an original proposition the sale was wholly and totally invalid, did not affect the bank’s title, nor by the execution of the security by Duffy did Kenney acquire any interest. Whether this principle Avould be at all affected by Duffy’s part in. the transaction we express no opinion. It is quite true the evidence demonstrates that the grantee named in the deed and by the instrument the apparent purchaser was not present at the sale. The property was bid off by the Colorado Securities Company if by anybody. Duffy got no title as purchaser at the sale, and having got none, it is quite difficult to see Iioav he could convey one. The proposition is still further affected by the notice which Avas afforded Kenney by what appeared on the record respecting the sale and transfer. It Avill be remembered this property was incumbered by a trust deed to secure a note due on the 1st of December, 1894. ■ At the time of the sale the note had not matured. This was a circumstance of Avhich Mr. Kenney was bound to take notice, and he should have inquired as to the power of the trustee and as to the request of the holder. The record shows a sale to Duffy under a trust deed securing $3,500 and interest, due five years after date, and of necessity with arrears - of interest or there would be no right of foreclosure, and a purchasé by Duffy for $25.00. This was followed by a quitclaim from the maker of the note to the grantor in the deed. The maker thereby lost title to its property and remained obligated to pay the unpaid portion of the debt. This was a circumstance of which Mr. Kenney was bound to take notice, and he Avas likewise bound under those circumstances to make full inquiry to ascertain Avhether the trustee had authority *36 to act, and whether his acts were regular and proper. Ely v. Pingery, 56 Kan. 17; Hume v. Franzen, 73 Ia. 25; DeMares v. Gilpin et al., 15 Colo. 76; Flint v. Lewis, 61 Ill. 299.
We therefore conclude upon these authorities that there was enough in the transaction to put Mr. Kenney upon inquiry, and that he was not an innocent purchaser for value without notice, and that even had he not been put upon inquiry by these matters, the trustee had no authority to sell when he did. The facts which were prerequisite to the exercise of such authority did not exist. This being true the trustee could in no way dispose of or incumber the property to the disadvantage of the original lienor. The lien of the Jefferson County Bank was therefore superior to that held by Mr. Kenney.
Regardless of all these considerations and of the points for which the appellant contends, we find enough in the record to entirely defeat Mr. Kenney’s claim of title. When the property was sold the Colorado Securities Company became the purchaser. This is under the assumption that the sale did occur, and that on behalf of the securities company, Aldrich bid it in. If we may be permitted to assume for the purpose of the discussion that the sale was valid and regular, and it is only on that theory that Mr. Kenney can succeed, then the securities company was the purchaser at the sale. Duffy was not. He was not there. The property was never struck off to him. He never paid any part of the consideration expressed hi the deed nor did he bid at the sale. So far as he and the Colorado Securities Company are concerned he never got any title. Having got none he could convey none. After the sale, the deed from Aldrich, the trustee, to the Colorado Securities Company was executed. It was signed and acknowledged and we assume, and to our satisfaction the evidence demonstrates, that it was recorded. After the sale and the execution of the deed whatever may have theretofore been the situation, Aldrich’s authority as a trustee was at an end. He was no longer a trustee for the parties or either of them. Whatever he did afterwards with reference to *37 the deed was done as the president and general manager of the Colorado Securities Company. The deed being in his possession and in the possession of the company we have a right to assume, and we do assume as a matter of law, that the deed was delivered. Under these circumstances what is the legal result ? Title passed, and the securities company became by virtue of the execution, acknowledgment and delivery of that deed, the owner of the property, and when it had once been executed that deed could never be canceled. 1 Devlin on Deeds, § 300, et seq., § 400, et seq. The title then was in the Colorado Securities Company. By direction' of Aldrich the clerk procured Duffy to execute a conveyance to Wilcox, a trust deed on the property and notes purporting to be secured by the trust deed. These are the notes which passed into Kenney’s possession. At the time of the execution of the trust deed and at the time of the making of the notes and their delivery to the securities company, Duffy had no title. He had never acquired one. The fact that the record showed a deed by the trustee to Duffy does not of necessity and cannot under these circumstances be permitted to establish Kenney’s title. The erasure of the name of the Colorado Securities Company as grantee, and the insertion of Duffy’s did not invest Duffy with title. It has been held in two or three of the New England states that where a grantee surrenders a deed for cancellation, and the grantor afterwards conveys, the grantee may not maintain a suit because he is without proper proof of title, and because he would be es-topped, the transfer being proven, from asserting his title against the innocent purchaser. That has no application in the present case. The securities company is not asserting title. The title asserted by the bank is one coming to an innocent purchaser of commercial paper secured by a trust deed on the property. This title is superior and antecedent to the one which is attacked. The principle therefore of these New England cases cannot be applicable. Since this is true, the very basis on which the defense rests, to wit, a valid and sufficient title conveyed by Duffy to Kenney by virtue of his trust *38 deed is destroyed. Duffy never had a title, and when once that is established, the trust deed through which Kenney claims, must of necessity fall to the ground whether the foreclosure be good or bad, and whether the Jefferson County Bank may or may not insist on the want of authority in the trustee, and whether they were or were not negligent in failing to get some instrument which could properly be recorded and which would afford notice to those who might subsequently deal with the property.
Under these circumstances we are quite of the opinion on either basis that the decree of the court which established the title of the Jefferson County Bank was right, based on correct principles, and it will accordingly be affirmed.
. Affirmed.