Wilson, J.
In December, 1890, William Gorringe borrowed from Mrs. Harriet 1ST. Scudder, plaintiff herein, $1,500, executing his promissory note therefor of date December 29, payable one year after date, and with interest payable quarterly. Contemporaneous with this, and to secure the payment of the note, Gorringe executed a deed of trust, conveying to Alonzo Rice, trustee, one half of a block of ground in Sunnyside Addition to the city of Denver, comprising nineteen and one half lots. Rice was a loan broker, who conducted the *71 business on the part of Mrs. Scudder, preparing the deed of trust, and inserting his name as trustee. In about three months thereafter, Rice informed Mrs. Scndder, who was then visiting in Iowa, that Gorringe desired to borrow 12,000 additional, securing it by a second deed of trust upon the same property. Mrs. Scudder sent the money to Rice, who thereupon loaned it to Gorringe, taking his note therefor, of date April 1, 1891, payable one year after date, to the order of Mrs. Scudder, with interest payable quarterly. To secure this, the second deed of trust was executed on the same date to Rice, as trustee. Both deeds of trust were recorded in due time, and were in the usual form, providing that upon the failure of Gorringe to pay the principal of the notes at maturity, or interest as provided, the trustee might proceed to sell, etc. In about two months thereafter, Gorringe, desiring to borrow a still further sum, negotiated a loan with the defendant, Mrs. Harker, for $2,000. The business in connection with this loan, on the part of Mrs. Harker, was conducted by O. A. Whittemore. It appears that in investigating the title, Mrs. Harker, or her agents, discovered the prior incumbrances in favor of Mrs. Scudder, and were unwilling to make the loan, unless some portion, at least, of the property was released from these incumbrances, so that on this part Mrs. Harker might have a first lien. Thereupon Rice, whether at the request of Whittemore or of Gorringe, or of his own volition, it does not clearly appear, executed to Gorringe a deed, releasing four of the lots from the operation of the deeds of trust given to secure payment of the notes of Mrs. Scudder. The release deed recited as a consideration that Gorringe had paid a part of the note, together with all interest and ehaz’ges thereon, and that it was executed at the request of Mrs. Scudder. This deed was acknowledged before Mr. Whittemore, the agent of Mrs. Harker, who was a zrotary public. Thereupon, on the same day, Mrs. Harker loaned $2,000 to Gorringe, taking his note therefor, azid a deed of trust upon the fouz- lots released by Rice. Both the release deed azid this deed of trust were placed on *72 record at the same time. It is undisputed, that, at the time of the execution of the release deed, Gorringe had never paid any part of the principal of said notes, or either of them, and that Mrs. Scudder had not requested Rice to execute the release, both of these recitals in the deed being untrue. Thereafter, for several years, Gorringe continued regularly to pay interest on the Scudder notes, payment being made through Rice. Some time in 1895 — the precise date not being definitely fixed — Mrs. Scudder first discovered that Rice had executed this release deed. In November, 1896, she thereupon commenced this suit, the only objects of which, with which we have any concern on this appeal, were to cancel, annul and set aside the release deed executed by Rice, and to obtain a decree declaring the two deeds of trust executed to secure the payment of the notes given to her to be a first lien on the entire real estate described in them. The decree was rendered as prayed by plaintiff, and from this Mrs. Barker appeals.
The contentions of defendant for a reversal of the judgment are substantially embraced in, and covered by, three general propositions : (1) that Mrs. Barker was an innocent, bona fide incumbrancer, without notice, and that, as between the two innocent parties, the superior equity is with her; (2) that the release by Rice was his act as Mrs. Scudder’s agent clearly within the scope of the apparent authority with which he was clothed, both by the terms of the trust deeds and by the course of dealings between them; (8) that Mrs. Scudder was guilty of such laches in asserting her rights as to defeat her claim to equitable relief. Both counsel, in exhaustive briefs, have discussed with much ability the legal questions underlying and involved in these propositions, and in support of their respective arguments have cited us to a very large number of authorities. We are relieved of any necessity of discussing these various cases and pointing out the nice distinctions upon which many of them turn. Whatever may be the rule in other states, and whatever may be the conflict of authority, the rule with reference to the piv *73 otal and decisive question in this case has been positively settled in this jurisdiction by harmonious decisions in both appellate courts. This rule, as laid down in Kenny v. Bank, 12 Colo. App. 33, is :
“It is undoubtedly true, and in this all the authorities agree, that a trustee by written instrument is clothed with no powers save those which are expressed in the writing, and if his authority to act is in any wise, or at all, dependent upon matters in pais, the parties dealing with the trustee are bound in the one case to see that the authority is expressly given by the instrument, and, in the other, that those facts exist which authorize the trustee to act.”
In the later case, this was quoted approvingly by our supreme court. Improvement Co. v. Whitehead, 25 Colo. 358.
In this case, the supreme court also says :
“ The powers of a trustee depend entirely upon the terms of the instrument appointing him, and no power is conferred unless expressed in the writing.”
In Bank v. Minor, 9 Colo. App. 367, the court said:
“ Without authority from the party for whose benefit the trust deed was given, the act of the trustee in releasing it was void.”
Applying this rule to the case at bar, it being undisputed that Mrs. Scudder did not authorize Rice to execute the release deed, it is clear that the deed was not effectual to discharge the incumbrance. It is true, that, strictly and technically speaking, the execution of the release deed was not in the exercise of a power expressly vested in the trustee by the deed of trust. The power specially given was to sell, in default of payment of the debt by the debtor, and this power could only be extinguished by payment. The authority to execute a release deed is, however, a necessary incident to, and dependent upon, this power. That which would destroy or defeat the power to sell would create the right or authority to release, which is simply a reconveyence by the trustee to the grantor of the title to the property after the fulfillment of the trust. It is only, however, after the trust is carried *74 out, and the power to sell extinguished by payment, that it is possible for the trustee to reconvey the title discharged of the incumbrance. Whatever restrictions or limitations there are upon the expressed power, it logically follows, attach to all incidents of it. Moreover, considering the case purely upon equitable grounds, Mrs. Harker was not an innocent incumbrancer. She knew from the records, or should have known, that the sole power with which Rice, as trustee, was invested was to sell the property, in case of default by Gorringe in payment of the principal of the notes when due, .or of the interest, according to its terms. Under the provisions of the instrument, Rice acquired no power whatever, either express or implied, either by the terms of the trust deed, or by operation of law, to execute a release deed before the maturity of the debt. Much less, did he have any authority to release a part of the property from the operation of the deeds of trust. These were powers which he could exercise only by the express authority of Mrs. Scudder, the owner and holder of the notes and also of the deeds of trust. This was amply sufficient to have put Mrs. Harker upon her guard. She knew that the notes were executed to Mrs. Scudder, and it was her duty, in order to have protected herself, to have made some investigation or inquiry of Mrs. Scudder, in order to have ascertained whether this power, which was absolutely essential and necessary in order to validate the deed of release, had been given by her. This, she did not do, but relied solely upon the recitals in the release deed.
It is contended, however, that the acts of Mrs. Scudder were such as to clothe Rice with apparent authority, as her agent, to do what he did, and that she is therefore estopped to deny it. This is largely a matter of fact, and the finding of the trial court.was to the contrary. We think the evidence fully supports the finding. It does not appear that Rice had anything to do with either of the transactions, other than what is usually done by a loan broker, namely, to prepare the papers and to collect the interest as it became due, paying it over to the principal. Neither was there any evidence that *75 Rice had any business relations with Mrs. Scudder outside of these two transactions, except at one other time, long previous, when he made a loan for her.
Further, there is not the slightest evidence to show that Mrs. Iiarker relied upon the agency of Rice. On the contrary, it appears that she relied wholly upon the execution of the release deed by the trustee, who was the proper and only party to execute it, when it was permissible to be executed at all, and on the recitals, therein. We find nothing whatever in an examination of the entire record upon which to base the claim that Rice was the agent of Mrs. Scudder, except to prepare the notes and deeds of trust, and possibly to collect interest when due. Moreover, if there had been acts from which an agency might be implied, it was limited in this case by the writing itself, which constituted him an express agent, for the express purpose only of enforcing the deed of trust by sale, in case of default by the payor of the notes. For a discussion of this question of agency in cases similar in principle to this, we refer to Lester v. Snyder, 12 Colo. App. 352.
It is said, however, that the plan tiff was guilty of such laches in asserting her rights that she should not be entitled to the equitable relief prayed for. Mrs. Scudder was somewhat uncertain about the exact time when she first learned that Rice had executed the release deed, but feels quite sure that it was about June, 1895. This uncertainty of memory is probably accounted for from the fact, as we find it in the record, that she was a woman eighty years of age, a consideration which should certainly have some weight in a court of equity when equitable principles of estoppel are invoked.
The delay in the institution of the suit may be accounted for by the fact that Mr. Rice, as appears from the evidence, realizing that he had exceeded his powers, told her, to the effect, that in a short time he felt that he could certainly arrange matters so that she would get all of her money.
Further, it does not appear that Mrs. Harker suffered any loss by reason of delay in bringing the suit. Mrs. Scudder *76 however, so far as Mrs. Harker was concerned, did assert her rights according to the evidence by telling her, soon after she discovered that the release deed had been wrongfully executed, in effect, that Mr. Rice had no right to make it, and that her deeds of trust still covered the four lots in question. Mrs. Harker, therefore, had actual notice of Mrs. Scudder’s intention to claim that all of the property specified in the two deeds of trust was still subject to them. Under the circumstances of this case, we do not think that a delay of sixteen months in bringing suit, after Mrs. Scudder first learned that the release deed had been executed, was so unreasonable as to deprive her of the relief to which she would have been otherwise entitled. It was long within the statutory period of limitations, and there is nothing to show that Mrs. Harker had heen misled thereby to her prejudice, and there were no intervening rights of third parties. The case in this respect, as we think, comes within the principles laid down by our supreme court in Dunne v. Stotesbury, 16 Colo. 89, and by this court in Du Bois v. Clark, 12 Colo. App. 231.
It is further contended by the defendant that the recitals in the- release of the trust deed in controversy were conclusive, and that evidence contradicting these recitals was improperly received at the trial. In support of this, they rely upon a statute adopted in 1893, which reads as follows:
“ Sec. 1. The recital in any release or partial release of any deed of trust affecting the title to real estate in this state, of the payment or partial payment of the indebtedness secured b}T such deed of trust so released, when such release deed shall be executed before the maturity of the note or indebtedness so secured, shall be evidence of such payment, so as to give full effect to such release, if duly and legally executed by the proper trustee, according to the purport thereof, as to subsequent purchasers or incumbrancers of the property mentioned in such release deed, and of all such property or real estate, the title to which may be effected or sought to be effected by such release deed, to the same extent and with the same force as the release of any trust deed *77 or deed of trust when executed after the maturity of the note or indebtedness thereby intended to be released.
“ Sec. 2. All releases of deeds of trust or trust deeds heretofore or hereafter made in this state shall be good and valid as to the recitals therein, whether made to the original maker of said deed or to a subsequent purchaser of the premises in such release deed described.” Sess. Laws of 1898, p. 473; 3 Mills’ Ann. Stats, sec. 469 a, 469 b.
It will be observed that the release deed in question was executed, and whatever rights Mrs. Scudder might have to set it aside and cancel it arose long prior to the adoption of. this statute. It is not necessary, however, for us to determine to what extent the act was or is valid and effectual so far as it is retroactive and retrospective in its nature. However this may be, it is a fundamental principle of statutory construction that before a statute can be construed to be retroactive, even when permissible at all, the legislative intent to make it so must clearly appear from the express terms of the act. This is not the case in this instance, so far as applied to the facts before us. The first section of the act is the only one which provides that the recitals of a release deed shall be evidence of the payment of the debt secured by the trust deed, and it will be observed that it does not refer to or embrace release deeds executed before the enactment of the statute. It is the second section only which refers to the recitals in release deeds theretofore executed, and the manifest and evident purpose of this section is simply to provide that these recitals shall be as good and valid in a case where the release runs to-a subsequent purchaser of the premises included in the deed of trust as they would be had the release deed been executed to the original maker of and grantor in the deed of trust. The contention of defendant, therefore, in this respect is not tenable.
For the reasons given, we think the judgment was correct and should be affirmed. Such will be the order.

Affirmed.