Gunter, J.,
dissenting.
The Grand Mesa Land and Cattle Company made two promissory notes payable to Gill, and se-’ cured the came by trust deed on real estate to Kellogg, as trustee; this, recorded, authorized the trustee to sell on default of payment of notes. The notes were assigned to appellee, plaintiff below. There *329 after Kellogg executed a release purporting to discharge the trust deed, reciting payment of the notes, and that the same was made at the request of Gill. Payment had not been made, nor had appellee requested the release. One month after recording of this release the above company mortgaged the land to Lamb; mortgage was foreclosed, Lamb being the purchaser; thereafter Lamb conveyed to appellánt.
This proceeding is to cancel the unauthorized release.
Is the release operative against appellee?
The public records charged Lamb and appellant with notice of the trust deed and its provisions.
“The powers of a trustee depend entirely upon the terms of the instrument appointing him,' and no power is conferred unless expressed in writing.”—The Bent-Otero Improvement Co. v. Whitehead, 25 Colo. 358, 54 Pac. 1023; Kenney v. Bank, 12 Colo. App. 33, 54 Pac. 404.
The trustee had by- the trust deed express power under certain conditions to sell and convey the equitable estate of the trustor; by the same instrument, as an incident to this power, he was impliedly authorized, upon certain conditions, to execute a release discharging the lien of the trust deed. — Harker v. Scudder, 15 Colo. App. 69, 61 Pac. 197, 1 Colo. Decisions 670.
“Whatever restrictions or limitations there are upon the expressed power (to sell) it logically follows, attach to all incidents of it (the power to release).”—Barker v. Scudder, supra.
In Improvement Company v. Whitehead, supra, the trust deed secured a note; the power to sell of the trustee therein was conditioned on the request of the beneficiary; the trustee foreclosed without this request, selling to a third party. At the instance of the beneficiary the sale was vacated on the ground *330 that the trustee had no authority to act. It was further held that the innocent purchaser was charged through the record of the trust deed with notice of the limitations on the trustee’s powers, and that if he bought in the absence of a performance of the conditions precedent authorizing the trustee to sell, the sale was void. Further, that the recitals in the trustees deed of the satisfying of such conditions did not prove them complied with nor protect the purchaser. The court in the course of its opinion says
‘ ‘ The assignments of error present but one question, and that is whether a trustee named in a deed of trust, wherein the power of sale is conditioned upon the request of the beneficiary, can sell the land and convey to the purchaser a good title without such request, or without any circumstance from which the purchaser could infer such request on his part. The powers of a trustee depend entirely upon the terms of the instrument appointing him, and no power is conferred unless expressed in writing. Such request, therefore, becomes a condition precedent to his power to sell; and since the rule of caveat emptor applies to trustees sales, the purchaser is bound to take notice that all matters in pais upon the existence of which the trustee’s power to act depends have been complied with.”
In Kenney v. Bank, 12 Colo. App. 24, 54 Pac. 404, it is said: “The trustee in a deed of trust is clothed with no' powers save those which are expressed in writing, and if his authority to act is dependent upon matters in pais, parties dealing with the trustee are hound to see that the authority is expressly given by the instrument and that the facts exist which authorize the trustee to act.”
It is clear from the authorities that the trustee cannot by sale convey the equitable estate of the trustor or discharge the lien of the beneficiary, under *331 the trust deed, without complying with the conditions precedent to the exercise of such power. This is true although the purchaser be innocent and the recitals in the trustee’s deed declare that he has complied with all conditions precedent in making the sale.
“Parties dealing with the trustee are bound to see * * * that the facts exist which authorize the trustee to act.”—Kenney v. Bank, supra.
If this be true, that is, that the trustee cannot by foreclosure convey the equitable estate of the trustor, or affect the lien of the beneficiary, without observance of the conditions prerequisite, and, if it be further true, that the power to release is from the same instrument, the trust deed, and that “whatever restrictions or limitations there are upon the expressed power (to sell) it logically follows attach to all incidents of it (the power to release),” how can it be that the trustee can execute a release discharging the lien of the trust deed without complying with the terms of the instrument whereby he derives his authority, and of which instrument and its limitations on the powers of the trustee all parties, by the public records, have notice? The same principle o’f law which renders the doctrine caveat emptor applicable to a purchaser under a trustee’s sale ought, and it seems upon authority does apply to releases by a trustee. The reason for the rule in both instances is the information as to the agent’s authority furnished by the recorded trust deed.
As I understand the former decisions of this court they sustain this conclusion. In Harker v. Scudder, supra, a trust deed to séeure a note, with power to the trustee upon certain conditions to sell, was given upon certain lots. A release deed was executed as to certain of the lots, which recited as a consideration therefor, that the payor had discharged part of the secured note, and that the release was *332 made at the request of the payee therein. These recitals were untrue. The release was recorded. Subsequently a trust deed to secure a new note payable to an innocent party was taken upon the released lots. The beneficiary under the first trust deed brought suit to cancel the release. It was contended by the beneficiary under the second trust deed that she was justified in relying upon the record of the release deed' and recitals therein. The court cancelled the release deed and said:
‘ ‘ Whatever may be the rule in other states, and whatever may be the conflict of authority, the rule with reference to the pivotal and decisive question in this case has been positively settled in this jurisdiction by harmonious decisions in both appellate courts. This rule as laid down in Kenney v. Bank, 12 Colo. App. 33, 54 Pac. 404, is: “It is undoubtedly true (and in this all the authorities agree) that a trustee by written instrument is clothed with no powers save those which are expressed in the writing; and if his authority to act is in any wise or at all dependent upon.matters in pais, the parties dealing with the trustee are bound in the one case to see that the authority is expressly given by the instrument, and in the other that those facts exist which authorize the trustee to act. ” In a later case this was quoted approvingly by our supreme court. Improvement Co. v. Whitehead, 25 Colo. 358, 54 Pac. 1024. In this case the supreme court also says: ‘ ‘ The powers of a trustee depend entirely upon the terms of the instrument appointing him, and no power is conferred unless expressed in the writing.” In Bank v. Miner, 9 Colo. App. 367, 48 Pac. 839, the court said: “Without authority from the party for whose benefit the trust deed was given, the act of the trustee in releasing it was void. ’ ’ Applying this rule to the case at bar, it being undisputed that Mrs. Scudder did not *333 authorize Bice to execute the release deed', it is clear that the deed was not effectual to discharge the incumbrance. It is true that, strictly and technically speaking, the execution of the release deed was not in the exercise of a power expressly vested in the trustee by the deed of trust. The power specially given was to sell in default of payment of the debt by the debtor, and this power could only be extinguished by payment. The authority to execute a release deed is, however, a necessary incident to, and dependent upon, this power. That which would destroy or defeat the power to sell would create the right or authority to release, which is simply a reconveyance by the trustee to the grantor of the title to the property after the fulfillment of the trust. It is only, however, after the trust is carried out, and the power to sell extinguished by payment, that it is possible for the trustee to reconvey the title discharged by the incumbrance. Whatever restrictions or limitations there are upon the expressed power, it logically follows, attach to all incidents of it. Moreover, considering the case purely upon equitable grounds, Mrs. Barker was not an innocent incumbrancer. She knew from the records, or should have known, that the sole power with which Bice, as trustee, was invested, was to sell the property in case of default by Gforringe in payment of the principal of the notes when due, * * *. Under the provisions of the instrument, Bice acquired no power whatever, either express or implied, either by the terms of the trust deed or by operation of law, to execute a release deed before the maturity of the debt. Much less did he havé any authority to release a part of the property from the operation of .the deeds of trust. These were powers which he could exercise only by the express authority of Mrs. Scudder, the owner and holder of the notes, and also of the deeds of trust. This was *334 amply sufficient to have put Mrs. Marker upon her guard. She knew that the notes were executed to Mrs. Seudder, and it was her duty, in order to have protected herself, to have made some investigation or inquiry of Mrs. Seudder, in order to have ascertained whether this power, which was absolutely essential and necessary in order to validate the deed of release, had been given by her. This she did not do, but relied solely upon the recitals in the release deed. ’ ’
I have quoted thus at length the portions of the opinion pertinent to the questions before us, that it may be seen how the court reasoned, and what it ruled. It seems to me that the ruling there made, and the reasoning therein justifying such ruling, if applied to the facts of the case under consideration, would necessitate a cancellation of the Kellogg release deed.
In Kenney v. Bank, 12 Colo. App. 25, 54 Pac. 404, the facts, so far as material to one of the grounds of the ruling therein, were: A trust deed securing a note was foreclosed without the knowledge or consent of the beneficiary, the bank; a trustee’s deed placed of record, and a note and trust deed executed by the grantee hypothecated for value to another party, Kenney. On application of the beneficiary under the foreclosed trust deed, the bank, the foreclosure was set aside. One of the grounds for granting the relief was that the trustee had no power to make the sale; this it was held vitiated the sale even as against Kenney who took the note and trust deed without knowledge that the trustee had not complied with the conditions prerequisite to the sale. The court said:
“It was Kenney’s duty to see not only that the power was granted but that the facts which authorized its exercise likewise existed. Under the proof *335 neither existed. The note was not due, and therefore the trustee had no authority to sell to enforce the payment of it, unless there had been a default in the payment of the interest, and the holder had elected to declare the whole sum due. The latter was undoubtedly a matter in pais. The logical deduction is that as an original proposition the sale was wholly and totally invalid, did not affect the bank’s title, nor by the execution of the security by Duffy did Kenney acquire any interest. * * * We therefore conclude upon these authorities that there was enough in the transaction to put Mr. Kenney upon inquiry, and that he was not an innocent purchaser for value without notice, and that even had he not been put upon inquiry by these matters, the trustee had no authority to sell when he did. The facts which were prerequisite to the exercise of such authority did not exist. This being true the trustee could in no way dispose of or incumber the property to the disadvantage of the original lienor. The lien of the Jefferson County Bank was therefore superior to that held by Mr. Kenney.”
In Bank v. Miner, 9 Colo. App. 362, 48 Pac. 837, the facts so far as material to this citation are: The note of Miner, payee First National Bank, with Shimer thereon as surety, with reference to Miner, was secured by a trust deed. This recited its giving to secure the note, and to secure Shimer in his surety-ship. A release of the trust deed was executed by the trustee wherein he recited payment of the note and that the release was executed at instance of Shimer. The note had not been paid and the payee therein, the bank, had not authorized the release of the trust deed. While the release was of record a trust deed was executed to secure a third party. The beneficiary under the first trust deed, the bank, brought suit to cancel the release. The court said:
*336 “The release executed by Morse recited that W. A. Miner had fully paid and satisfied the original note. This recital was not true. * * * At the time the release was written it was unpaid, and it is still unpaid. The release also recited that it was made at the request of Frank Shimer. Shimer had no authority to order a release. As he had not paid the debt, the security did not belong to him. Its release could be legally authorized only by the bank, the holder of the debt; and the paper did not purport to be executed by its authority. Without authority from the party for whose benefit the trust deed was given, the act of the trustee in releasing it was void. The mortgage to the Union Bank of Greeley was executed before this supposed release was made; but even had it been executed subsequently, as was the case with the mortgage to Bronk, the recital in the releasing instrument that it was executed at Shimer’s instance, and the absence of any appearance of authority from the owner of the debt, would have made it its duty to inquire into the facts, if it intended its mortgage to be a prior lien.”
Judgment was entered cancelling the release. If the note secured by the first trust deed had been paid then the release was properly executed, and was effective in discharging the lien of the trust deed. If the recitals in the recorded release were conclusive upon the beneficiary under the first trust deed, First National Bank, as to the fact of payment, then the release could not be questioned at the instance of such beneficiary, yet, at the instance of such beneficiary the court cancelled the release deed. In effect its holding was that the release was void because unauthorized by the beneficiary under the trust deed; that the recitals in the release deed, of payment of the note, although the release was recorded, were not proof of such fact in favor of a subsequent incumbrancer.
*337 In Barstow v. Stone, 10 Colo. App. 396, 52 Pac. 48, the release deed was executed by a successor in trust; it recited facts which, if true, authorized him to execute the release deed. This went of record. The facts recited as to his authority to act were false. At the instance of the beneficiary under the trust deed released, the release was cancelled against a subsequent incumbrancer for value without knowledge of the falsity of the facts recited in the release deed.
As to Appelman v. Gara, supra, it was not necessary for the court to decide therein the question before us, and in my opinion it did not decide it. The release was cancelled upon the ground that the facts were sufficient to charge a subsequent innnocent purchaser with notice.
If section 446, 1 Mills’ Ann. Stats., validates the release deed in the present case as against appellee, Talcott, and in favor of appellant, I am unable to see why it did not cure the various unauthorized instruments placed of record in the above cases. This section, in my judgment, has no greater effect upon the release deed in the present case than it would have upon a forged instrument.
Three Illinois cases are cited in support of the opinion of the court herein. In my judgment they are not in point. In Porter v. McNabney, 77 Ill. 235, the grantor in the trust deed securing the note conveyed the encumbered premises to the party shown by the records to be the holder of the note thus secured. To this beneficiary the trustee likewise released. The laws of Illinois required an assignment of the note secured by trust deed to be placed of record to render such assignment of the note and trust deed valid against innnocent parties. The land was conveyed by the party shown by the records to be the holder of the note and to whom deed of release was executed, and to whom the grantor in the trust deed had conveyed *338 his equity, to an innocent third party. The court declined to cancel the release deed at the instance of the one claiming to hold the note secured by the trust deed, and who claimed the release as unauthorized, the reason being that every one shown by the records to be interested in the trust deed, that is, the beneficiary thereunder, the trustor and the trustee had all in effect, by the several conveyances, consented to the release. The beneficial interest of the record holder of the note, the equitable interest of the trustor, and the legal interest of the trustee had all united in the party shown by the recitals to be the beneficiary under the trust deed. Had the assignee of the note placed his assignment of the note and trust deed of record, a different question would have been presented.
Our statute did not require appellee, Talcott, to record his assignment of the note or trust deed; such recording was not necessary to protect the assignment to him against a subsequent lienor.—Kenney v. Bank, supra.
A statement of the facts in Ogle v. Turpin, 102 Ill. 148, distinguishes it from the case before us. Runyan held notes payable to himself by Allen secured by mortgage on lands. The notes Runyan endorsed to Ogle: The statute required the assignment of the
notes and mortgage to go of record in order to be valid against third parties without notice. This was not done. Runyan obtained a deed for the mortgaged premises from Allen. Runyan thereupon, without the knowledge or consent of Ogle, on his (Runyan’s) apparent title, which appeared perfect of record, obtained a loan from another party giving trust deed with usual power of sale to secure the same. Ogle brought suit to foreclose his released mortgage. The court dismissed the bill, upholding the release. The court inter alia said:
*339 “As the record stood it showed that Runyan was the owner of the title free from encumbrances. The assignment of the notes operated as an equitable assignment of the mortgage, and the assignment was an instrument that related to or affected the title of the land, and to be come operative as to creditors and purchasers the assignment of the mortgage should have been formally made and recorded to charge notice to all persons dealing with the title, or at least the assignment on the note should have referred to the mortgage, and that assignment should have been recorded. As between the parties the mere assignment without recording was all that was required to assign the mortgage, but as to strangers it was otherwise.”
As our statute did hot require an assignment of the notes and mortgage to Talcott placed of record to make it effectual as to strangers, Lamb was not justified from the silence of the record in believing that Gill was still the owner of the notes and the proper party to authorize the release.
In Howard v. Ross the release was executed by the party alone entitled, according to the records, to execute the release, and was authorized by the only party, according to the records, entitled to authorize the release. The assignee of the securities in such case, as in the two Illinois cases, had failed to effectuate his assignment as to strangers by complying with the statute requiring its record.
The facts herein summed up are: Appellee held a note secured by a recorded trust deed; without his knowledge or consent the trustee executed and placed of record a release. Thereafter appellant, by mesne conveyances from the trustor, acquired the encumbered property. Appellee asks, appellant resists, the cancellation of the fraudulent release.
The appellee has done all the law required of him to preserve his security; he is without fault.
*340 Through the public records appellant knew of the trust deed and of the limitations therein placed upon the powers of the trustee; it knew the law to be that the trustee had no power to release without the consent of appellee; it knew that the facts constituting this consent rested in pais; that if it relied on the existence of these facts without investigation it did so at its peril.
“If the validity of the deed depends on an act in pais, the party claiming under that deed is as much bound to prove the performance of the act as he would be bound to prove any matter of record on which its validity might depend. It forms a part of his title; it is a link in the chain, which is essential to its continuity, and which it is incumbent on him to preserve. These facts should be examined by him before he becomes a purchaser, and the evidence of them should be preserved as a necessary muniment of title.”—Williams v. Peyton, 4 Wheaton 77, approved in Kenney v. The Bank and in Improvement Company v. Whitehead, supra.
“There is no principle which substitutes the declaration of the trustees, however solemnly made, in place of the fact which could alone authorize them to recover. The purchaser, if he would be safe, must not content himself with the recital that the trusts have ceased, but must ascertain at his peril whether such is the case.”—Briggs v. Davis, 20 N. Y. 15.
Although forewarned by the contents of the trust deed and the law, appellant made no investigation as to the existence of facts authorizing the trustee to release. The trustee had no authority to release. Appellant, the party in fault, is the one who should suffer by the fraudulent release.
It was not the purpose of our recording act to give validity to a forged or unauthorized instrument. The records might contain a forged deed; an innocent *341 purchaser might become the grantee thereunder, yet, it would not be contended that our recording act would give validity to the forged instrument and deprive the true owner of the same through such forged deed. A public record is not a warranty of title, but is merely a means afforded by law of giving constructive notice to the world of the execution of any given instrument appearing thereon, leaving the question, of validity of such instrument, should the same become material, to he determined wholly independent of the record itself.
In my opinion the judgment of the lower court should be affirmed.