J. Weston Essington, Receiver of the Utica State Bank of Utica, Appellee, v. Estate of William Wylie, Deceased, Appellant.

Gen. No. 8,731.

Opinion filed January 19, 1934.

A. E. BUTTERS, C. B. CHAPMAN, R. A. GREEN and HIBBS & POOL, for appellant.

W. C. JONES, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

J. Weston Essington, receiver of the Utica State Bank of Utica, Illinois, filed a claim in the sum of $3,000 against the estate of William Wylie, deceased, in the probate court of La Salle county. The claim was disallowed by the court. On appeal to the circuit court a jury was waived and the case tried before the court. The order of the probate court disallowing the claim was reversed and judgment entered against the estate for the sum of $3,000 and costs, payable in due course of administration. From this judgment the administrator has taken an appeal to this court.

The Utica State Bank was examined by the auditor of public accounts of Illinois, on or about June 1, 1931.

The examination revealed that securities of the bank, aggregating $31,177.85, had depreciated in value. On June 11, 1931, the cashier and three of the seven directors of the bank met with the auditor at his office in Geneva. The auditor was represented by Mr. Wylder, chief bank examiner of Northern Illinois. The decedent, William Wylie, was not present. At this meeting there was a discussion concerning the removal of these securities from the bank. At the conclusion of the discussion, the auditor recommended that the directors charge off the depreciation on the questionable securities from the surplus account of the bank, or remove them from the assets of the bank and replace them with cash. At the time of this meeting the bank was solvent and its capital was not impaired, and the surplus account was of sufficient size to have permitted all of the depreciation on the securities in question to have been charged against it and still leave a balance of $2,000.

On the following day six of the directors, one of whom was William Wylie, now deceased, at a special meeting, adopted the following resolution:

"Be it resolved that Surplus Account be charged with $10,000.00 and Undivided Profits Account be charged with $177.85, and the following items be charged from Assets of the Bank:

| | |
|---|---|
| Hotel Graemere | $ 1,000.00 |
| 120 West Lake St. Garage | 2,000.00 |
| Brewerton Coal Corp | 1,250.00 |
| Inland States Service Co | 1,000.00 |
| Geo. W. Hartenbower | 3,800.00 |
| Other Real Estate—Joe Kinzer | 1,127.85 |
| | $10,177.85 |

"Be it further resolved that the seven directors furnish $2,850.00 each, making a total of $19,950.00 and

E. E. Childers furnish $1,050.00, and the following securities be taken from the Assets of the Bank and Trusteed for the benefit of the seven directors and E. E. Childers, each to benefit pro rata in the liquidation of the Trusteed Assets.

| | |
|---|---:|
| Seaboard Air Line R. R. | $ 2,872.00 |
| Cornell at 54th Apts. | 1,000.00 |
| Engineering Bldg. | 1,500.00 |
| Park Central Hotel Annex | 1,649.00 |
| Book Washington Bldg. | 2,917.50 |
| Jeffry Cyrl Apts. | 485.00 |
| Narragansett Apts. | 3,000.00 |
| Missouri Valley Public Service Co. | 2,842.50 |
| Joe Kinzer Mortgage | 3,734.00 |
| Hotel Graemere | 1,000.00 |
| | $21,000.00'' |

On the same day the cashier and the same six directors sent the following letter to the auditor of public accounts:

"June 12th, 1931.

"Mr. Oscar Nelson,
Auditor of Public Accounts,
Geneva, Illinois.
"Dear Sir:

"At a Special Meeting of the Directors of this Bank held Friday, June 12, 1931, at four o'clock, a resolution was passed calling for each of the seven directors to furnish $3,000.00, making a total of $21,000.00, and that Surplus Account be reduced $10,000.00 and Undivided Profits Account be reduced $177.85, and the following assets amounting to $31,177.85 be taken from the Assets of the Bank and $21,000.00 of the assets be Trusteed for the benefit of each of the seven directors,

each to benefit pro rata in the liquidation of the Trusteed Assets:

| | |
|---|---:|
| Seaboard Air Line | $ 2,872.00 |
| Cornell at 54th | 1,000.00 |
| Engineering Bldg. | 1,500.00 |
| Park Central | 1,649.00 |
| Hotel Graemere | 2,000.00 |
| 120 West Lake | 2,000.00 |
| Book Washington | 2,917.50 |
| Jeffry Cyrl Apts. | 485.00 |
| Narragansetts | 3,000.00 |
| Missouri Valley Public Service | 2,842.50 |
| Brewerton Coal (Stock) | 1,250.00 |
| Inland States Service | 1,000.00 |
| George W. Hartenbower | 3,800.00 |
| Joseph Kinzer, Other Real Estate | 4,861.85 |
| | $31,177.85 |

"We, the Directors, would appreciate having from fifteen to thirty days in which to raise above amount. Mr. Hornung is sick in bed and unable to attend this meeting."

J. J. Hornung, one of the directors of the bank, was not present when the resolution was adopted and the letter written, and did not participate in any manner in the plan as set forth in the resolution. E. E. Childers was the cashier of the bank, but not a director.

After the adoption of the resolution and writing the letter, no further action was taken by board of directors, or any of individual directors to carry out the schemes set forth either in the resolution or in the letter. The securities enumerated in the resolution were never removed, and were the property of the bank at the time it suspended the transaction of business, and are now in the possession of the receiver. William Wylie died on June 26, 1931, and the bank

suspended the transaction of business on October 2, 1931. No tender of these assets, or any part thereof, or interest thereon, was ever made to the decedent or to the administrator of his estate.

Before the hearing of the case in the circuit court, the defendant estate presented a written motion to dismiss the claim for the reason that it did not state a cause of action. The motion was overruled. At the conclusion of claimant's case, and again at the conclusion of all the evidence, the defendant estate also presented written motions to exclude the evidence and find for the defendant. These motions were also overruled.

Appellant contends: That there was no consideration for any promise which the decedent may have made to pay money to the Utica Bank, and therefore, no liability on the part of his estate; that two of the eight persons who were to assume mutual obligations and receive mutual benefits, as provided in the resolution adopted by six members of the board of directors, did not assent to, participate in or ratify the provisions thereof, and therefore no contract was created and the decedent never became bound; that the six directors, in adopting the resolution, were acting only in their official capacity and not as individuals, and did not, as individuals, ever promise to pay any money to the bank; that the claim against decedent's estate is in the nature of a suit for the specific performance of a contract and should not have been allowed for the reason that no tender was or could be made of the securities in question by the bank or the receiver thereof; that the judgment is in excess of the amount that could have been allowed under the claim; that the claim does not set forth a cause of action.

The record discloses in this case that the resolution on which the receiver of the bank is now seeking to hold the estate of William Wylie, deceased, was passed by six of the members of the board of directors on

June 12, 1931; that the resolution by the board of directors suspending business and closing the bank was entered on October 2, 1931. The auditor of public accounts had knowledge that the members of the board of directors of the bank and the individual members of the same had not taken out securities and paid the sum of money into the bank which the resolution called for. The auditor permitted them to do a general banking business for a period of four months, in which no action was taken either by the auditor or the board of directors to comply with this resolution. That is, we think, ample proof to show that at the time the resolution in question was adopted, the board of directors of the bank and also the auditor of public accounts believed the bank was in a solvent condition and the value of the capital stock thereof not impaired.

The auditor reported that certain securities of the bank had depreciated in value and something should be done in regard to those securities to assist in strengthening the financial condition of the bank. He suggested two ways in which this could be done, but advised that the better way would be that $31,177.85 worth of securities be taken from the assets of the bank by the individual members of the board of directors and each of the directors pay into the bank the sum of $3,000 and the balance of the money to be charged against the Undivided Profits Account in the bank. The auditor made no threats that if this was not done the bank would be closed or that there would be a capital stock assessment either against the directors or the stockholders. There was no promise or offer of any kind by the auditor to the directors to do anything. The resolution was merely a voluntary offer on the part of six of the board of directors to pay when the securities were placed in trust for them. It is our opinion that there is no consideration to support or create any contract between the auditor or the bank,

and the individual directors by the adoption of the resolution.

The resolution by six of the seven directors attempted to bind all seven of the directors, and also the cashier, E. E. Childers, to pay to the bank the sum of $21,000. It provided that certain securities were trusteed for the benefit of these eight parties and that then they would pay a certain amount to the bank to go into the general assets of the same. This was a mutual undertaking and the obligations to pay money were to be concurrently carried out. In return thereof, the parties were to share pro rata in the liquidation of the trusteed securities. It is our opinion that this was a joint undertaking and if all of the parties named in the resolution did not agree to its terms, then none of the parties would be bound by the resolution. All did not agree; therefore, no contract relation was created and William Wylie, deceased, never became bound by the terms thereof.

The only acts in which the deceased, William Wylie, participated were in the adoption of the resolution of June 11 and the letter of June 12. Certainly in the adoption of the resolution the six directors were acting in their official capacity and not as individuals. The fact that the resolution, signed only by six members of the board, provided for the payment of money by persons not present, strongly indicates that they were acting only in their official capacity, and that before they should all be bound as individuals, a contract of some kind should be entered into by all of them. No such contract was ever prepared or signed. We are of the opinion that the resolution did not bind the decedent, William Wylie, to pay to the bank any sum of money as set forth in the resolution.

Had a contract been created by the resolution on June 12, 1931, between William Wylie, deceased, and the bank, then the question arises could the estate of

William Wylie be forced to pay $3,000 when it is stated in the resolution that the securities mentioned were to be trusteed for the benefit of the directors and are conceded now to be in the hands of the receiver as part of the assets of the bank. The resolution provides that the directors should pay this money into the bank on a specified condition. That condition was that $21,000 worth of security should be placed in trust for the benefit of the directors and Childers. After the resolution was passed no effort was made by the board of directors to do this. Neither has the receiver placed these securities in the hands of trustees for the benefit of the interested parties, nor, as far as the record discloses, has he offered to do so. We think that the failure of the bank or of the receiver to make a tender of these securities for the benefit of the directors and Childers, is a bar to the receiver in attempting to enforce this resolution, and defeats a recovery of the claim against the estate of William Wylie, deceased.

It is insisted by the appellant that the claim filed does not state a cause of action and the court erred in not sustaining the motion to dismiss the same. We are of the opinion that the appellant was fully informed of the nature of the demand and from an examination of the claim itself he could ascertain what he had to meet at the trial. The claim is sufficient for that purpose. The objection that the judgment is in excess of the amount that could be allowed under the claim because the resolution on which the receiver has relied, only attempted to hold the estate of William Wylie, deceased, for the sum of $2,850, we think is well taken, but it is immaterial to our view of the case. It is our opinion that the circuit court of La Salle county erred in entering judgment on the claim in this case. The judgment should be and it is hereby reversed.

*Judgment reversed.*