**Standard Accident Insurance Company, Appellant, v. J. H. Mueller et al., Appellees.**

**Gen. No. 39,474.**

O'CONNOR, P. J., dissenting.

Heard in the first division of this court for the first district at the April term, 1937. Opinion filed June 28, 1937. Rehearing denied July 10, 1937.

CASSELS, POTTER & BENTLEY, of Chicago, for appellant; RALPH F. POTTER, LESLIE H. VOGEL and RICHARD H. MERRICK, all of Chicago, of counsel.

LITSINGER, HEALY, REID & BYE, of Chicago, for appellees; DANIEL M. HEALY, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit as assignee of an indemnifying bond signed by certain directors of the Forest Park Trust & Savings Bank running to Albert C. Roos as

treasurer and *ex officio* township clerk of schools, and upon trial by the court suffered an adverse judgment from which it appeals.

The only defense presented by plea and upon the trial was that the bond sued on was never fully executed because it was agreed that to be effective all of the directors should sign it, and three of the fifteen directors of the Forest Park Bank did not sign it; that it was delivered only conditionally and never became effective.

Roos was appointed treasurer of Township 39, Range 12, in Cook county for the term commencing July 1, 1930, ending June 30, 1932; by virtue of the statute (ch. 122, par. 68, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 123.071) he was required to give bond with surety, conditioned upon his delivery to his successor in office of all moneys, securities and property coming into his hands as township treasurer; Roos gave such bond in the amount of $300,000, with plaintiff as surety.

Roos as township treasurer deposited large sums in the Forest Park Trust & Savings Bank, of which he was president and defendants were directors. There were three other directors—H. E. Jenkins, August Thode and Albert C. Roos himself.

October 5, 1931, plaintiff, evidently becoming concerned as to the deposits, wrote to Roos suggesting some rearrangements of deposits in some of the banks where the township funds were deposited; that his deposit in the Forest Park Bank was over $111,000, and requested him to transfer some of this to another bank, also that he secure a depository bond from the Forest Park Bank for at least $75,000, to be signed by the directors. The letter called attention to the "present condition of banks," which was not getting any better. To this Roos replied October 17th that he had submitted depository bonds as suggested to the banks named in plaintiff's letter, including the Forest Park

Bank for $75,000, and that he had advised the Forest Park Bank directors that if they did not sign the bonds it would be necessary for him to withdraw the township deposits.

October 20th a meeting of the directors of the Forest Park Bank was held and defendants assert that at this meeting it was agreed that all the 15 directors must sign the depository bond to become effective. Roos told the directors that the surety company required him to get a depository bond signed by the directors, and that if he did not secure this he would have to withdraw the township deposit from the bank; there was a general discussion, some of the directors first objecting to signing the bond. One director, Mr. Hann, said if they all signed he would sign. Director Arch testified that Roos said he would not deliver the bond until all the directors had signed. Roos prepared the bond and the directors, except Roos, Jenkins and Thode, signed it. Jenkins left the meeting early, apparently before the bond was signed; Thode was home suffering from a fatal illness from which he shortly died; neither Jenkins nor Thode was asked to sign the bond.

In the body of the bond appears only the names of the 12 directors who signed it. This would indicate that only these were expected to sign it. Defendants called Roos as their witness; he testified that he said nothing to the directors about getting Thode's or Jenkins' signature. This tended to contradict Arch's testimony that Roos had said he would not deliver the bond until every director signed it. Roos, the third man who did not sign the bond, was the obligee to whom the bond ran. Apparently it was intended that he should not execute an obligation running to himself, as he was obligated to the township without the bond.

In the bond sued on, the 12 directors, naming them, are designated as sureties, bound unto Albert C. Roos, treasurer, and *ex officio* clerk of township schools,

called the obligee, in the sum of $75,000, for the payment of which the principal and sureties bind themselves jointly and severally. It further recites that whereas the Forest Park Trust & Savings Bank is a depository for moneys for the custody of which the obligee may be responsible, and if, during the term of his office, ending June 30, 1932, he shall faithfully account for and pay over on legal demand all moneys deposited with the bank by him, then the obligation to be null and void, otherwise to remain in full force. This is signed by the bank, by its vice president, and the 12 directors, and was delivered to and retained by Roos in his possession.

Roos' retention of the bond in his possession was prima facie evidence of its effective delivery. The facts in *Comstock v. Gage,* 91 Ill. 328, are very similar to those before us. There all the directors of a bank were to give a bond to secure the deposit of Gage; it was delivered to Gage before the signature of one of the directors was obtained; the jury found that the bond had been delivered and was effective without the signature of one of the directors. The Supreme Court held that the acquiescence in the retention of the bond without anyone afterward speaking to Gage on the subject was strong evidence "either that there was an unconditional delivery to Gage, or that if there was such a condition attached to the taking of the bond by Gage as testified to by Holmes (that all the directors sign) it was waived, or that it was one only for the interest of the obligee and to satisfy him, and not one which was considered as of importance to the signers of the bond to be performed before they were willing the bond should be delivered and have effect as their bond." The verdict of the jury that there was an effective delivery was upheld.

The directors signing the instant bond were not acting as gratuitous sureties. Roos told them that unless

the bond was forthcoming it would be necessary to withdraw the township deposits from the bank; they executed the bond for the purpose of retaining this deposit. It was for their benefit and interest to execute the bond. In *Overly Special School Dist. v. Haber,* 193 Wis. 403, where a decree against a defendant surety was affirmed, it was held that under such circumstances directors who were sureties do not stand upon the same basis as do gratuitous sureties; that "they occupy a position very similar to that occupied by surety companies receiving pay for the protection offered and furnished in a surety bond." To the same effect are *Vogel v. City of Vinita,* 170 Okla. 235, and *Holmes v. Eller,* 170 Tenn. 257.

Defendants cite *Belleville Sav. Bank v. Bornman,* 124 Ill. 200, and *Essington v. Estate of Wylie,* 273 Ill. App. 272, involving facts unlike those now before us. In the *Belleville* case the conditional character of a guaranty was established, and in the *Essington* case the agreement purported to bind one who did not agree. In the present case the fact of a conditional undertaking of the directors is not established by the evidence.

The trial court held with plaintiff as to the effectiveness of the execution and delivery of the bond. The court said: "I hold that if nothing else intervened, the directors would be liable. The delivery of the bond was to Roos. He was the custodian of it. When they signed it, and let it out of their hands, and gave it to him, it was a delivery. . . ."

Under Rule 36 of the Supreme Court and Rule 1 of this court a brief statement by the trial judge of the reasons for his conclusions may be included in the report of the proceedngs at the trial. It has been held in many cases that the finding of the court, upon trial without a jury, will not be disturbed on appeal unless it is palpably against the manifest weight of the evidence. *Bullman v. Cooper,* 362 Ill. 469, 477.

We see no reason to disagree with the conclusion of the trial court in this respect, and, moreover, as was said in the *Comstock* case, *supra,* the alleged condition of signing the bond by all the directors was not considered as of importance to those who signed it before they delivered it. The trial court held, however, that the subsequent letters of plaintiff showed a repudiation by it of the bond; that it refused to accept it and is estopped from maintaining suit by reason of this repudiation. This defense was not raised by plea nor presented by the defendants upon the trial. It originated exclusively with the trial court. Under such circumstances the defense advanced by the court should not be upheld.

The correspondence does not sustain the assertion that plaintiff repudiated the bond and is therefore estopped from claiming under it. We have noted plaintiff's letter of October 5th to Roos, insisting that he secure from the directors of the Forest Park Bank and the other banks in which he had funds on deposit a depository bond to secure such funds. October 17th he replied that such depository bonds would be signed. Plaintiff then writes Roos on October 30th asking for information as to the amount he has on deposit in the several banks. November 4th Roos replies that his balance in the Forest Park Bank is over $91,000 and that he holds the depository bond in the amount of $75,000, signed by the directors of this bank. There was no further correspondence until November 20th when plaintiff wrote to Roos saying that it had received late financial statements of the various banks in which Roos, as treasurer, had deposits, and saying that it was positive that it and the reinsurers "will not continue on your bond . . . unless you protect the funds in some other way than by accepting bonds signed by the directors," and saying, "You should insist upon the

banks depositing collateral security with you." There were also other suggestions touching the protection of the deposits which the letter said might save Roos possible embarrassment if the surety should petition for release on the official bond. The letter concluded by saying that Roos "must get the Banks to put up collateral security or we will be forced to petition for our release under your bond."

Apparently the banking situation was becoming more precarious, and on November 27th the Chicago office of plaintiff wrote that they were under instructions from the home office to move to get released as surety on the bond, with the question as to whether Roos would be willing to resign his official position or should plaintiff petition the county court for release. The bank closed its doors December 16th, shortly after the last letter.

We do not find in the correspondence any repudiation by plaintiff of the bond. It was secured in the first instance at its request, but when the banking situation became more critical it naturally sought for increased protection. It wanted Roos to have, not only the depository bond, but also collateral to secure the deposit. Its letters show apprehension and dissatisfaction with the protection of the deposits, but this is quite different from repudiating whatever protection there was. Roos made no reply and did nothing about the matter. It is well settled law that a surety does not, by taking additional security against loss, waive his right to be subrogated to any security held by the principal. *Crawford v. Richeson,* 101 Ill. 351; *Gossin v. Brown,* 11 Pa. 527; *Smith v. Dinsmoor,* 119 Ill. 656, 663; and *Worcester Nat. Bank v. Cheeney,* 87 Ill. 602, 615. Also many other cases.

Moreover, plaintiff could not repudiate the bond as it ran to treasurer Roos. Until plaintiff, as surety upon

his official bond, paid the loss which occurred when the bank failed, it had no rights in the bond, and so long as Roos did not repudiate or terminate it, plaintiff could not. A legal right cannot be relinquished before it comes into being. *Hansell-Elcock Co. v. Frankfort Marine Accident & Plate Glass Ins. Co.,* 177 Ill. App. 500, 503, 504. Plaintiff acquired no right in the depository bond until it was assigned by Roos to it.

June 2, 1932, plaintiff paid on its bond to the township trustees $94,334.56, the amount of the deposit in the Forest Park Bank when it suspended, and December 24th took a written assignment from Roos of his rights under the bond. This indicated its attitude toward the bond.

Defendants' brief does not attempt to support the theory of repudiation advanced by the court. It only questions the right of Roos to proceed on the bond because of alleged ineffective delivery, and correctly says that plaintiff is "in Roos' shoes. They are claiming by assignment and subrogation. Their position is the same as though Albert C. Roos were suing." As we are in accord with the trial court in holding that the bond was effectively delivered to Roos he could have maintained his action thereon, and plaintiff, the assignee, now has this right.

Plaintiff asks us to enter judgment in this court, under section 92 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 220; Jones Ill. Stats. Ann. 104.092. There is some uncertainty in our mind as to the amount for which judgment should be entered. Upon the trial statements were made by respective counsel indicating that plaintiff had received dividends from 15 per cent to 20 per cent of its claim and that still larger dividends might be expected. Evidence should be heard as to the proper amount for which plaintiff is entitled to judgment.

·For the reasons indicated· the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

MATCHETT, J., concurs.
O'CONNOR, P. J., dissents.